ANDREW KOHLER v. WELLS, FARGO & Co.

DURESS OF GOODS.— The issue of an attachment and a levy of the same on goods, if there is a legal cause of action existing, is not such a duress of goods as to give a cause of action for damages in favor of the one whose goods are seized.

AFFIRMATIVE OF ISSUE IN ACTION FOR DAMAGES.—If the complaint avers that the defendant brought a false charge against the plaintiff, and threatened to publish the same and injure his credit unless he paid a false account, and that by reason of the false charge and threats he paid the same without other consideration, and prays judgment for the money thus paid, the payment of the money without consideration is the gist of the plaintiff's cause of action, and upon that issue he holds the affirmative. If he fails to offer any evidence of the facts tending to show a want of consideration, a nonsuit should be granted.

ORDER OF INTRODUCING TESTIMONY.—A plaintiff cannot keep back all his testimony on a material point until he draws out the testimony of the other party, and then introduce it; and if he does so reserve his testimony, the Court will not allow him to come in and make out his case after the defendant rests.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Porter & Holladay*, for Appellant.

*Alexander Campbell*, for Respondents.

By the Court, SAWYER, J.

Plaintiff sues to recover four thousand dollars, alleged to have been paid under duress. The defendants constitute the well known express company, engaged in the business of carrying treasure and other valuables between California and the Eastern States and Europe.

The complaint alleges, substantially, that on the 2d day of April, 1860, the plaintiff, at the request of defendants, through their agents, called at the express office of said defendants in San Francisco, and was there by the direction of defendants' agent conducted into a private room, in which were assembled the agent and several of the employés of the defendants and their counsel, and there, by said agent, employés, etc., falsely and suddenly charged and accused of having made a certain

bar of lead there shown, and of having, some time prior to said 2d of April, left said bar of lead at said express office, representing the same to be a bar of gold of the value of two thousand and seventy-five dollars, with intent to cheat and defraud said defendants; that, although he denied the charge, the said defendants, by their said agents, etc., informed plaintiff that they had witnesses who would swear to sufficient to convict the plaintiff of the offense charged, and threatened that unless he then and there settled the matter by paying the said sum of two thousand and seventy-five dollars and the additional sum of nine hundred and twenty-five dollars, for some purpose unknown to plaintiff, they would cause such witnesses to be brought against him, and that he would be ruined in his business and reputation; that he was greatly excited and overcome by such false and sudden charge, and greatly put in fear, and desired and requested time for reflection, and to consult his counsel, but the said parties refused to allow plaintiff to depart without first paying the said sum, on pain of ruin of his business and disgrace to himself and family; that he was a merchant, doing a large business, having creditors in various parts of Europe, to whom he had been accustomed to forward money, and other treasure, through defendants' express, and drawing drafts against the same; that prior to the said 2d of April, he had forwarded some eight thousand dollars through defendants, by their express, to his creditors in Europe, which, he supposed, was on the way to its destination, but which, he was informed by said agent at the time when said false charge was made, had been detained in the hands of said defendants in the City of New York, and would not be forwarded unless said plaintiff complied with their said demand, and paid the sum of four thousand dollars; that intimidated by said threats, and fearing that his reputation as a merchant and a man would suffer, and with the hope of releasing said money so detained, he paid said sum; that said false charge was made for the purpose of intimidating him, and obtaining said sum without any equivalent; that he has never received any value for said sum so paid; that defend-

ants retain the same, and on demand made refuse to pay it. Plaintiff demands judgment for the amount and interest.

The answer denies that the said charge of depositing a bar of lead, representing it to be gold of the value stated, with intent to defraud defendants was false, but on the contrary says the charge was true; denies that defendants' agents told plaintiff that they had witnesses, who would swear to enough to convict him of the offense charged, or of any offense, or that they threatened plaintiff that, if he did not pay said sum and expenses, they would cause said witnesses to be brought against him, and ruin his business and reputation; but admits that their said agents informed plaintiff that they had evidence sufficient to fully satisfy their minds, that plaintiff had passed off on them said spurious bar, and that they had no doubt they could establish the fact; and that they presented to said plaintiff an account of damages and expenses sustained by them, and demanded payment; denies that plaintiff was put to any fear other than such as naturally results from guilt, or that they refused to let him go except on pain of ruin; but avers on the contrary that defendants' agents, etc., distinctly informed plaintiff that they had no intention to detain him; that he was free to go or stay, and that it rested entirely with him to determine whether or not he would settle the claim made upon the terms offered by them; but that the offer would not remain open after that interview was closed. The answer further denies, that plaintiff was on that occasion informed that eight thousand dollars, or any other sum, was detained in their hands in New York, or that it would not be forwarded unless said four thousand dollars should be paid, and avers, on the contrary, that some three or four weeks before the said interview, the said agents of the defendants, having been informed to that effect by the office at New York, notified said plaintiff that a sum of eight thousand dollars, placed in their hands for transmission to Europe, had been attached in the City of New York to secure the said claim of said defendants against said plaintiff; and avers that said sum had been in fact so attached for said purpose, and denies that any money was detained by

said defendants in any other manner than as above stated—denies that anything whatever was said at said interview, on the 2d of April, about the detention or attachment of said moneys, until the said plaintiff, upon reflection declared and agreed, that he would pay said defendants' claim; but that, after so agreeing, plaintiff asked if said defendants would release said attachment in New York. To which said agents replied that they would; that thereupon said plaintiff drew two checks, of two thousand dollars each, on Banks & Bull, bankers, dated on said day, and the said plaintiff and agents of defendants thereupon mutually executed and delivered to each other a memorandum, stating the demand and the settlement by said two checks, and stipulating that said attachment should be released by said defendants, and any claim for damages on account thereof, by said plaintiff; that said checks were delivered after banking hours, and plaintiff requested that one of said checks should not be presented for a few days, till plaintiff could provide for the same, and that one check was not presented for several days, and the other not till the day after it was drawn and payable; that, in the meantime, plaintiff consulted his counsel, and gave directions to his banker not to pay the check last presented, but after repeated consultations with his counsel and mature deliberation finally unconditionally withdrew his objection to the payment thereof, and the same was paid several days after its delivery, with the full knowledge, consent and approbation of plaintiff. The answer avers that said four thousand dollars was paid under no other circumstances than as stated in said answer; that they had paid the value of the said bar as gold, and costs and expenses in respect to it, and in tracing out the party who shipped the said bar of lead, amounting to about four thousand dollars in all.

The testimony in the record, as to the acts which transpired at the interview of the second of April in the office of defendants, clearly goes to show that the version given in the answer is the correct one, in those respects wherein there is a discrepancy between the averments of the complaint and those of

77

the answer. There was testimony on the part of the defendants, also, showing that on the 19th of March, 1859, the defendants transmitted a package, purporting to be a gold bar of the value of two thousand and seventy-five dollars, to a house in Paris, France ; that the agents of the defendants at the San Francisco office subsequently received advices to the effect, that the said package proved to be a lead bar, and informing them that considerable expenses had been incurred in some litigation about it ; that a package containing a lead bar was returned to the San Francisco office ; that plaintiff Kohler, before the 19th of March, 1859, had been in the habit of sending gold bars through the express of defendants to Europe, put up in a similar manner ; that the cloth wrapper returned as aforesaid had upon it the address in the same handwriting, as the address of similar packages left by plaintiff Kohler before the said 19th day of March, 1859, and also had the number of the bar upon it in the handwriting of Mr. Kelly, the head clerk of defendants in that department of the San Francisco office, placed there by him on the day it was shipped, and that the said number on the wrapper so returned corresponded with the number of a bar on the stump of the receipt book, which purported to have been received from Mr. Kohler on that day, which number in the receipt book was in the handwriting of Mr. Bell, the clerk who received the bar ; and the testimony of Bell tended to show that he received a bar of similar description and value. The testimony also showed that the lead bar exactly fitted the wrapper in which it was returned, which wrapper contained but one row of stitches, and did not appear to have been sewed but once.

Defendants had a verdict. The appeal is from the order denying a new trial.

Clearly, the order ought not to be reversed on the ground that the verdict is contrary to the evidence, even admitting that the evidence on the part of the plaintiff was sufficient to entitle him to go to the jury. But we think it was not, and that the Court ought to have granted a nonsuit when the mo-

tion was made for that purpose, at the close of plaintiff's evidence.

Neither the facts stated in the complaint, nor the evidence, show any duress of the person in any legal sense of the term, and plaintiff cannot recover on that ground alone. He must recover, if at all in this action, on the ground of a payment of his money without consideration. There could have been no duress of goods, which can avail the plaintiff, if there was a cause of action in fact existing against him, and his goods were only taken in attachment in the pursuit of the ordinary remedy afforded by law to enforce and secure the claim.

The plaintiff alleges, that the defendants falsely charged him with imposing the lead bar upon them, representing it to be gold. If the charge was not false, that is to say, if the plaintiff did deposit the lead bar, of course there was a good cause of action against him, and he cannot complain that he was required to pay to the defendants its value, and the damages incurred by his wrongful act. He did in fact compromise and pay the claim, knowing at the time whether the charge made against him was false or not, and it is this compromise and payment, which he seeks to avoid. After stripping the complaint of all extraneous matter, it will be found that the cause of action, if any there be, arises out of the payment of the money without consideration; and of course the establishment of a want of consideration was, under the circumstances, an essential element in plaintiff's case, without which he could not recover. (1 Green. Ev. Sec. 78.) The affirmative of the issue to show a want of consideration for the compromise made by the plaintiff with defendants—and this was really the material issue in the case—was with the plaintiff. To prove this issue it was necessary to show that he did not deposit the lead instead of a gold bar, and thereby show a want of consideration. But it is often necessary for a party to prove a negative. (1 Green. Ev. Sec. 78.)

There are, undoubtedly, many cases where, from the nature of things, it may be difficult to do so, and the law, having regard to this difficulty, in such cases, does not require impos-

sibilities, and does not, therefore, demand plenary proof. But it is necessary to offer some slight testimony, at least, tending to prove the issue, and which, in the absence of any counter testimony, would afford a ground for presuming the allegation to be true. In this case not a shadow of testimony is shown by the record to have been introduced or offered on the part of the plaintiff before he rested, which tended, in the remotest degree, to show that the lead bar was not deposited by him. The testimony of the plaintiff was entirely confined to what took place at the office of defendants, at the interview on the 2d of April, where the lead bar was shown and the subject discussed, and to the subsequent transactions with reference to the payment of the checks, etc. And this is the more remarkable from the fact that the plaintiff himself, who, of all men, best knew, and who alone, in all probability, had positive knowledge as to whether he did deposit the lead bar or not, was the leading witness on his own behalf and examined at length, and yet said nothing at all upon the point; nor, indeed, was he questioned upon that subject. Here he had in his power the means of introducing direct testimony upon the point as to whether he deposited the lead bar or not, and did not even offer it, but seemed carefully to avoid the subject. This certainly is a significant fact, when considered in connection with the legal proposition that some proof on the point was essential to his recovery. We think for this defect of proof, if for no other reason, the plaintiff should have been nonsuited at the close of his testimony.

He was not, however, and the defendants introduced their testimony. While the defendants introduced much testimony, without objection, tending strongly to show that the lead bar was deposited by plaintiff, not a particle was introduced which tended in any degree to supply the defect in the plaintiff's proofs, so that at the close of defendants' case, there was no testimony before the jury which tended to show that plaintiff did not ship the lead bar, and consequently no testimony tending to show that he paid his money without consideration.

After the close of defendants' testimony, the plaintiff offered, as rebutting evidence, to prove by Q. A. Chase, who was bookkeeper for plaintiff on the 19th of March, 1859, the time when said lead bar was charged to have been deposited, that on that day, plaintiff deposited with " Wells, Fargo & Co., to be forwarded by their express, a gold bar of the value and description named by Mr. Kelly (defendants' witness) as being of the value and description marked on the wrapper of the package which Mr. Kohler left there, and that this gold bar was purchased of Wells, Fargo & Co., the defendants, on the same day, and that they received the value thereof in cash."

The defendants objected, on the ground that this evidence should have been offered on the plaintiff's original case before he rested. The Court sustained the objection and plaintiff excepted. This ruling presents the most important question in the case. It must be borne in mind that the plaintiff had offered no proof at all on this point; yet it was a point upon which proof was essential to his recovery. He did not now, so far as appears by the record, show to the Court that he had, through any mistake in law, or from any inadvertence, omitted to introduce evidence on this point, and upon some reasonable cause shown, appeal to the discretion of the Court to open his case and permit him to supply the defect. But he simply relied upon his right to introduce the testimony by way of rebuttal. It was testimony that clearly belonged to the original case of the plaintiff, and should have been introduced before he rested; for if it tended to prove anything material, it was that Kohler did not deposit a lead bar. A plaintiff has no right to keep back all his testimony on any material point until he draws out the testimony of the other party, and then come in with his own. This would give him an undue advantage contrary to the rules of law, and if he does so reserve his testimony deliberately and wilfully, the Courts will not allow him to come in after the defendant rests and make out his case. But whether the plaintiff will be permitted to re-open his proofs or not, is a question which rests very much in

the discretion of the Court below, upon consideration of the circumstances surrounding the particular case.

As testimony in rebuttal, it did not rebut any evidence that was material to the defense, as the case stood on plaintiff's testimony. Nor did it rebut any testimony upon any affirmative defense set up by defendants. We think there was no error in excluding the testimony. It is remarkable, that even here, the plaintiff did not offer his own testimony to show, that he did not in fact deposit a lead bar, but the testimony of his bookkeeper to show that he deposited a gold bar on that day.

No other points upon rulings as to the admissibility of evidence have sufficient plausibility to require notice.

The views already expressed render it unnecessary to consider the numerous instructions asked by the plaintiff and refused by the Court. Looking at the testimony of the plaintiff himself on the stand, in the light most favorable to him, there can be no pretense, that there was any duress of the person, in any sense known to the law, and we do not understand that it is claimed there was. Without any testimony tending to show a want of consideration for the sum paid by way of compromise, those instructions would, on this ground alone, be rendered inapplicable to the case before the jury, and would only have tended to embarrass and mislead, rather than assist them in their deliberations. The instructions refused were abstract, upon the case presented in the record, and all would require more or less modification, even supposing the plaintiff to have made out a *prima facie* case. Unless the charge made by defendants against the plaintiff was false, there was of course sufficient grounds for maintaining an action against him for the damages sustained by the defendants by the acts of plaintiff, and the matter in dispute was a fair subject for compromise; and certainly the pursuit in New York of the ordinary remedies furnished by the law to secure the demand, cannot be a duress of goods, nor would a payment, by way of compromise of such a claim, be without consideration within the principle of any of the authorities cited. There can be no pretense that the compromise was made under any mistake

of facts. For in all probability, the plaintiff was the only person who had positive knowledge as to whether he was guilty of a fraud in depositing a bar of lead for one of gold, or not. Nor do we see in what respect he could have been mistaken upon any principle of law affecting the compromise. After suspending the payment of one check, and reflecting upon the subject for several days, with the benefit of the advice of his counsel, in the language of the admission made by his counsel on the trial, he "subsequently withdrew his objection and paid it." And the plaintiff himself testifies, in answer to a question put by a juror, "As to the checks, I did not pay them under protest." Conceding the original compromise to have been procured under improper influences, this was a ratification of the compromise after mature deliberation, and the compromise was of a suit pending in New York, upon reasonable cause. For this reason, as well as for the reasons stated in regard to the instructions refused, there was no error as against plaintiff in the charge complained of as erroneous, assuming it to have been given. But it nowhere appears in the record that it was in fact given by the Court.

We are of opinion that the order denying a new trial should be affirmed, and it is so ordered.

Mr. Justice SHAFTER, having been of counsel, did not participate in the decision of this case.