[Civ. No. 10272.  Second Appellate District, Division One.—January 21, 1936.]

LOMAN C. ADAMS, Respondent, v. HENRY E. WARREN, Appellant.

Harry D. Parker, Raymond G. Stanbury, Parker & Stanbury, White McGee, Jr., and Vernon W. Hunt for Appellant.

W. I. Gilbert for Respondent.

ROTH, J., *pro tem.*—This action arises out of a collision between the automobiles driven by Loman C. Adams, plaintiff and respondent, and Henry E. Warren, defendant and appellant, on Telegraph Road near the city of Los Angeles, in the nighttime on August 18, 1933. The case was tried before a jury, and a verdict for the sum of $30,000 was returned in respondent's favor. The evidence shows that respondent was operating his automobile in a westerly direction on Telegraph Road approaching the east end of Rio Hondo River bridge at a speed of approximately 40 miles per hour. The highway over the bridge is marked for two lanes of travel. The highway to a point about 1,000 feet east of the easterly end of the bridge is divided into three lanes of travel. Beyond a point 1,000 feet easterly of the east end of the bridge, the highway, although wider, is only marked in two lanes of travel. Appellant, immediately prior to the collision, was operating his automobile in an easterly direction, had passed the bridge and after doing so, attempted to pass an automobile in the center lane, struck and knocked off the left front wheel of respondent's car, tore off the left door, the top, the left running-board and the rear fender. Respondent, according to his testimony, at said time was traveling as follows:·

"A. My car, the left front wheel was not to exceed a foot north of the northerly white line. Q. That would put your right wheels how close to the northerly side of the pavement? A. About 2 feet. Q. Did you continue to follow along the northerly side, in the northerly lane of traffic, until the accident occurred? A. Yes, sir."

Both parties at the time of the collision were alone. The headlights on each automobile were burning. Respondent was not at or prior to the accident overtaking any car or

intending to make a left-hand turn; at and near the point of collision there were no cars parked on the northerly side of the road, nor were there any excavations or obstructions. The night was perfectly clear. At a point about halfway between the easterly extremity of the bridge and the point of collision, appellant, according to his testimony, drew alongside of. a car traveling in the southerly lane and at about that time another car, which was likewise traveling in an easterly direction, suddenly and without warning, overtook the appellant and passed him on his left in the northerly lane of traffic. This car then passed in front of appellant, cutting across his lane of traffic, and shutting off his view of the road, gradually passing over into the southerly lane of traffic. In the meantime, the car driven by respondent was approaching from the east and, according to appellant, was approaching in the middle lane of traffic unknown to appellant at that time, since his view of respondent's car had been shut off by the intervention of the car which had pulled alongside of him on his left and suddenly passed in front of him. Immediately after the intervening car had cleared out of appellant's path, respondent's car suddenly loomed up in the path of appellant's car in the middle lane of the highway and the cars driven respectively by respondent and appellant sideswiped and collided in the middle lane of the highway. The point of impact was approximately 450 feet from the easterly end of the bridge and opposite a sign on the northerly side of the highway which read: "Slow, Rio Hondo River Bridge".

Respondent contended that the collision took place in the northerly lane of the highway and appellant contended that it took place in the center lane. Appellant concedes that the evidence is conflicting and that there is sufficient substantial evidence to sustain a verdict or finding that the collision occurred in accordance with respondent's evidence. Appellant urges, however, that because of the evidence in support of his contention, and since there were only two actual eyewitnesses to the accident, to wit, respondent and appellant, it was vitally important that the jury "be fully and thoroughly instructed upon the law pertaining to each version of the accident". None of the instructions given by the trial court is criticized. Appellant complains however, that the failure of the trial court to give three several instructions which he requested with reference to the application of section 123 of

the California Vehicle Act prevented him from having a fair trial and constitutes such prejudicial error as to warrant a reversal of the judgment. Section 123 of the California Vehicle Act reads as follows:

"Whenever any street or highway has been divided into clearly marked lanes for traffic, drivers of vehicles shall obey the following regulations:

"(a) A vehicle shall normally be driven in the lane nearest the right hand edge or curb of the highway when said lane is available for travel except when overtaking another vehicle or in preparation for a left turn.

"(b) A vehicle shall be driven as nearly as is practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

"(c) Upon a highway which is divided into three lanes a vehicle shall not be driven in the center lane except when overtaking and passing another vehicle or in preparation for a left turn or unless such center lane is at the time allocated exclusively to traffic moving in the direction the vehicle is proceeding and is signposted to give notice of such allocation."

The trial court did give the following instructions predicated on paragraph (a) of said section:

"No. 12. You are instructed that it is provided by paragraph (a) of section 123 of the California Motor Vehicle Act, among other things, as follows:

" '(a) A vehicle shall normally be driven in the lane nearest the right hand edge or curb of the highway when said lane is available for travel except when overtaking another vehicle or in preparation for a left hand turn.'

"No. 13. You are instructed that it was the duty of the plaintiff Dr. Adams, to at all times operate his automobile as close as practicable to the right hand edge of the highway. Should you find that at the time and place of the accident the plaintiiff, Dr. Adams, did not operate his automobile as close as practicable to the right hand edge of the highway, and that such failure on his part contributed directly and proximately to the happening of the accident, then the plaintiff, Dr. Adams, was negligent."

The first instruction requested by appellant and refused by the trial court, called paragraph (c) of section 123 of the

California Vehicle Act to the jury's attention and informed them that, "If you find that the plaintiff, Dr. Adams, at the time and place of said accident was driving his automobile in or partially in the center lane of traffic, he was guilty of negligence as a matter of law." The other two requested instructions, which were also refused by the trial court, were as follows:

"You are instructed that when a highway is divided into three lanes the center lane thereof is for the exclusive use of vehicles which are overtaking and passing other vehicles, and for vehicles making lefthand turns. It is admitted in this case that the plaintiff, Mr. Adams, was not overtaking or passing any other vehicle and was not preparing to make a lefthand turn. You are therefore instructed that if at the time and place of said accident the plaintiff, Mr. Adams, was driving his automobile in or partially in the center lane he was guilty of negligence as a matter of law, and if such negligence on his part proximately contributed to the accident no matter how slightly, you are instructed that the plaintiff cannot recover and your verdict must be in favor of the defendant, Mr. Warren. . . .

"You are instructed that the defendant, Mr. Warren, was entitled to use the center lane of the highway in question for the purpose of overtaking and passing a vehicle proceeding in the same direction as himself so long as he exercised ordinary care in so doing. This is true, regardless of whether or not in using said center lane his automobile passed to the left of the center of the highway."

█ It is settled that before a party can complain of the refusal of the trial court to give a requested instruction, he must establish that there was sufficient evidence to justify such an instruction and that the instruction properly stated the law. (*Hamlin* v. *Pacific Electric Ry. Co.*, 150 Cal. 776, 783 [89 Pac. 1109].) █ It will be noted in paragraph (c) of section 123 of the California Vehicle Act that when a center lane is "allocated exclusively to traffic moving in the direction the vehicle is proceeding and is signposted to give notice of such allocation", it is perfectly proper to use the center lane of traffic. There is no evidence in the record showing that the highway was not sign-posted authorizing the use of the middle lane, and in the absence of such proof it would have been error for the trial court to instruct the jury

that, if it found from the evidence that respondent was driving his automobile in the center lane of traffic, he was guilty of negligence as a matter of law. Before the requested instructions could be given, the burden of proof rested upon appellant to establish that the highway was divided into three lanes of travel, that the respondent was using the center lane of traffic or a portion thereof and was not overtaking or passing another vehicle, was not in preparation for a left-hand turn and *that the highway at that point was not signposted allocating the center lane to traffic moving in the direction in which respondent was traveling.* (*Corcoran* v. *Pacific Auto Stages, Inc.*, 116 Cal. App. 35 [2 Pac. (2d) 225]; *Vicino* v. *Amador*, 71 Cal. App. 604 [236 Pac. 369]; *Pisani* v. *Martini*, 132 Cal. App. 269 [22 Pac. (2d) 804].)

In the Vicino case, *supra*, the court says at page 609, speaking with reference to a comparable set of facts:

"Bearing in mind the provisions of the statute just quoted we shall pass to a consideration of the evidence. The evidence introduced showed the existence of some sign on the side of the highway near the point where the accident happened. But the evidence did not show whether the sign was erected by the trustees of the town of Gilroy, whether the sign was red with white letters thereon, or whether there were any letters on the sign. There was no evidence introduced showing whether there was any building within one-quarter of a mile of the Catholic church hereinabove mentioned.

"In this condition of the record it is manifest that the evidence introduced did not justify the trial court in giving any instructions regarding the law applicable to the operation of motor vehicles in 'a closely built up district'."

In the Corcoran case, *supra,* the court says at page 38, speaking also with reference to a comparable situation:

"But the defendant did not introduce any evidence that the place was not sign-posted. To establish a defense of contributory negligence the burden was on the defendants. (Code Civ. Proc., sec. 1869; *Kohler* v. *Wells, Fargo & Co.,* 26 Cal. 606, 611; *Wilson* v. *California C. R. R. Co.,* 94 Cal. 166, 174, 175 [17 L. R. A. 685, 29 Pac. 861]; *Alaska Salmon Co.* v. *Standard Box Co.,* 158 Cal. 567, 570 [112 Pac. 454].)"

It is apparent, therefore, that the trial court properly instructed the jury and the fact that the trial court refused appellant's requested instructions does not constitute preju-

dicial error for the reason that appellant failed to establish by the evidence that respondent was not within the exception set forth in subdivision (c) of section 123 of the California Vehicle Act.

■ The second point urged by appellant is that the verdict is so grossly disproportionate to the actual loss sustained by respondent, as to admit of no other conclusion than that the verdict was the result of passion and prejudice.

Respondent at the time of the accident was 29 years of age and was an osteopathic physician and surgeon, licensed to practice in the state of California since 1928. The injuries suffered were as follows: Shattering of the bones of the left elbow, resulting in a complete loss of the same; the collapse and loss of a part of his right lung, as the result of a bone splinter or blood carried from the elbow by the blood circulation to the right lung; intense pain and suffering requiring the use of anesthetics and narcotics for a period of several weeks after the injury; the swelling of the arm and drainage of the elbow by the application of three tubes, through which Metaphen and Dakin's solution were alternately run twenty-four hours a day over a period of several weeks; confinement in the hospital five and a half weeks from the date of the injury; complete severance of the tricept muscles which lower and raise his arm; a permanent stiffness of the elbow requiring the selection of a position in the healing thereof for purposes of affording respondent the most practical position for future use in its stiffened condition; the inability to perform his professional services from the date of the accident until March 15, 1934, during which time he was required to keep the arm in a plaster of paris cast; a permanent thirty-five per cent loss of the use of his left arm; the development of pneumonia, proximately caused by the loss of the lower right lobe of his lung; the spitting of blood and the intense pain and suffering resulting therefrom; terrific pains in the joint and down in the wrist since the injury while attempting to lift heavy articles; $350 paid for special nurses; $399.35 paid for hospital; $30 for the loss of a wrist-watch; $30 for the loss of a suit of clothing; damage to his automobile; the complete loss of net earnings at the rate of $500 per month from the date of the accident to about December 15, 1933; partial disability of earnings from December 15, 1933, up to the time of the trial; and a permanent and partial disability of seventy-

five per cent in performance of future surgical services. There was no showing of his present income at the time of the trial, or that it was any less than at the time of the accident. Nor was there any evidence that it was necessary for respondent to have associated with him a doctor to take care of his present and future patients. The evidence shows that he has performed operations since the accident, that he is able to sew up scalp wounds, remove cysts, remove growths in the rectum; that he does obstetrical work, including the actual delivery of babies; that he sees as many as twenty-five patients a day, and gives electrical and osteopathic treatments. The evidence also shows that from the time of his return from the hospital on September 25, 1933, and to December 15, 1933, he worked in his office taking care of patients with the assistance of a doctor, whose work he supervised, and that since December 15, 1933, he has taken care of his patients without the assistance of any associate doctor.

In the case of *Holden* v. *Patten-Blinn Lumber Co.*, 7 Cal. App. (2d) 220 [45 Pac. (2d) 1037], this court at page 1039 said, quoting from the case of *Morris* v. *Standard Oil Co.*, 188 Cal. 468, 473 [205 Pac. 1073]:

" 'The question of excessive damages is one that is first addressed to the trial court. Practically, the trial court must bear the whole responsibility in every case. The power of appellate courts over excessive damages exists only when the facts are such as to suggest, at first blush, passion, prejudice, or corruption on the part of the jury. (*Bond* v. *United Railroads*, 159 Cal. 270–286 [113 Pac. 366, Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687] ; . . . *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 713 [106 Pac. 83] ; . . . *Bisinger* v. *Sacramento Lodge, etc.*, 187 Cal. 578 [203 Pac. 768]. . . . )' (*Holmes* v. *California Crushed Fruit Co.*, 69 Cal. App. 779 [232 Pac. 178] ; *Zibbell* v. *Southern Pacific Co.*, 160 Cal. 237 [116 Pac. 513] ; *Kelley* v. *Hodge Transportation System*, 197 Cal. 598 [242 Pac. 76] ; *Campbell* v. *Bradbury*, 179 Cal. 364, 375 [176 Pac. 685] ; *Wallace* v. *Pacific Electric Ry. Co.*, 105 Cal. App. 664 [288 Pac. 834] ; *Rannard* v. *Harris*, 113 Cal. App. 15 [297 Pac. 623].)' "

There is nothing in the record which at first blush, or at all, suggests passion, prejudice or corruption on the part of the jury. The evidence demonstrates substantial injuries and leaves no doubt that plaintiff suffered considerable physical

pain and mental anguish over an extended period of time. Even though this court, if it had sat as a trial court, may have awarded a lesser sum, it is established that such a situation furnishes no cogent reason for setting aside a verdict of a jury, otherwise free from legal criticism.

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 19, 1936.