[Civ. No. 16209.   First Dist., Div. Two.   Mar. 23, 1955.]

JOHN I. REESE, Appellant, v. MARY DAY, as Executrix, etc., et al., Respondents.

Stewart Cureton and Lucas, Wyckoff & Miller for Appellant.

Hoge, Fenton & Jones for Respondent Day.

Ropers & Majeski for Respondent Komstheoft.

KAUFMAN, J.—This is an appeal from judgments of nonsuit in favor of defendants Mary Day, executrix of the estate of Anthony H. Day, deceased, and Emile Komstheoft in an action for personal injuries sustained by plaintiff and appellant John I. Reese in an automobile collision.

Anthony Day was the driver of the car in which appellant Reese was riding as a guest at the time it collided with a pickup truck driven by respondent Komstheoft. Appellant's action against the Day estate was founded on wilful misconduct under the guest statute; the action against Komstheoft, on simple negligence.

The accident occurred on November 5, 1951, shortly before 3:50 p.m. on State Highway No. 17 between Los Gatos and Santa Cruz at a point about five miles northerly of Santa Cruz. The day was clear and the pavement dry. There was testimony that traffic conditions generally were light on that highway at that time of year, but there is no testimony as to whether or not there were any other cars than those involved in the accident in the immediate vicinity when the collision occurred. Appellant Reese suffered from retrograde amnesia as a result of the accident and hence had no recollection of its occurrence or of events for several hours prior thereto. The only eyewitness who had any recollection of the accident was respondent Komstheoft, who was called to testify under section 2055, Code of Civil Procedure. The only testimony elicited from him was that he saw the driver of

the other car sitting upright behind the wheel and that he was not slumped over just prior to the impact.

The highway had three marked traffic lanes, a 10-foot center lane and 12-foot outside lanes. There was a slight incline in the grade southward. The highway was straight in the area where the accident occurred, the view being unobstructed for 1,500 feet north and 750 feet south of the point of collision.

Day was driving a 1951 four door Packard sedan in a southerly direction. On Day's left as he approached the point of impact were entrances to two business establishments, an antique shop and an automotive and tractor welding shop, which shops were open for business at the time. There were no habitations of any kind on the west side of the highway in that area. Day was accompanied only by appellant Reese who occupied the right front seat of the Packard.

Respondent Komstheoft was driving alone in a 1949 Ford pickup truck. The two vehicles collided head-on in the middle of the most easterly or northbound lane. Skid marks and tire marks of the vehicles leading to the point of impact showed that both had been traveling in the center lane just prior to colliding in the eastern lane. The tire or skid marks of the Day car started at the east line bounding the center lane, and went obliquely across the easterly lane to the point of impact. The skid marks of respondent Komstheoft's truck were laid down by all four tires for about 50 feet and came from the center lane into the easterly lane at a more gradual angle. Gouge marks and debris indicated the point of impact. More gouge and skid marks extended from that point to the place where the vehicles came to rest on the easterly shoulder of the highway in the antique shop driveway. The Packard was thrown back to a point about 24 feet northerly of the collision point, and the truck came to rest 5 or 8 feet south of the Packard. The photographs introduced in evidence show that the front of the vehicles were demolished, indicating that they came together with terrific violence.

Day was found dead behind the wheel of his car by a member of the California Highway Patrol who was called to the scene of the accident. His right chest was entirely crushed, and his lung and heart were protruding through a hole in his chest. There was a rent five centimeters in length in the right auricle of his heart which was traumatic in origin.

Respondent Komstheoft was very seriously injured. A blood sample taken at the hospital after the accident was

chemically analyzed. It showed a concentration of 0.17 per cent of alcohol by weight. Expert testimony was offered to show that a person with such a percentage of alcohol in his system is definitely under the influence of alcohol, that muscular coordination is very likely to be impaired, vision affected, reaction time slowed, and judgment may be affected adversely.

The original complaint was introduced in evidence by defendant Day during the cross-examination of appellant Reese, as an admission. That complaint had alleged wilful misconduct in that Anthony Day knew that he was suffering from a heart condition, knew that it was extremely dangerous for him to drive an automobile, and that at the time of the accident he suffered a heart attack and lost control of his car. The answer denied the misconduct but admitted that deceased had suffered a heart attack and had lost control of his car. The amended complaint, however, although it alleged the pre-existing heart condition, alleged that the wilful misconduct consisted of intentionally causing the automobile "under his control to cross from the extreme righthand lane of the said highway into the extreme lefthand lane while traveling at an excessive and unlawful rate of speed."

Appellant contends that the nonsuit was improperly granted against appellant and in favor of respondent Mary Day. Since all reasonable inferences most favorable to the plaintiff must be drawn in passing on a motion for nonsuit, we must infer that Day was alive and fully conscious just prior to and at the time of the collision, and that his death resulted from his extensive injuries. There is medical testimony to support this inference, and the driver of the other vehicle saw him sitting upright behind the wheel. The skid marks, though showing much lighter than those of the Ford truck in the photographs, might indicate a slight application of the brake by the driver. Appellant argues that there is sufficient showing that a conscious act was done by the driver under circumstances disclosing a knowledge that injuries to his guest would be a probable result, that this is the only inference that can be drawn from the fact that he turned obliquely into the path of an oncoming vehicle on a wide straight three lane highway in broad daylight with a guest beside him in the front seat.

Appellant points out that the trial court stated that Day's conduct could be accounted for upon two theories only, "one,

that he had some sort of a seizure that certainly caused him to do this most unusual act, or, secondly, that he intended injury to himself or damage to his property." If there was sufficient evidence of circumstances in the record to support the latter theory, then on motion for a nonsuit, the trial judge would have been bound to deny the nonsuit.

Undoubtedly there is sufficient evidence of circumstances to support an inference that the deceased driver was grossly negligent. But is there sufficient evidence of wilful misconduct in view of the tests laid down by the cases? There is of course no evidence and no possibility of securing any evidence to show that he had an actual intent to injure his guest. Appellant must then show that there are circumstances from which it can be inferred that deceased acted in a wanton and reckless disregard of the safety of his guest. In *Wright* v. *Sellers*, 25 Cal.App.2d 603, 613 [78 P.2d 209], it is said that it is "sufficient if the act, or the failure to act, be done or omitted under such circumstances as would justify the reasonable inference that the driver should have known that injury to his guest was a probable result."

In *Meek* v. *Fowler*, 3 Cal.2d 420 [45 P.2d 194], the court stated that "Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result." A recent case, *Mercer-Fraser Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 102 [251 P.2d 955], cites *Meek* v. *Fowler*, with approval, and quotes from *Porter* v. *Hofman*, 12 Cal.2d 445 [85 P.2d 447], the definition of "wilfulness" as necessarily involving "the performance of a deliberate or intentional act or omission regardless of the consequences." It further quotes the Porter case to the effect that wilful misconduct is "something much 'more than mere negligence, or even gross or culpable negligence,' and as invoking conduct of a *quasi* criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its possible consequences' . . . To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is estimated to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act, to the end of averting injury." (See also *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.*, 40 Cal.2d 656 [255 P.2d 431].)

■ It is true, as respondent admits, that the most that can be said in the present case, is that Anthony Day, while conscious attempted to turn left off the highway at a time when such movement could not be made with safety because of the approaching vehicle. ■ However, intent and knowledge of probable injury cannot always be inferred from facts showing an act or omission constituting negligence. (*Robertson* v. *Brown,* 37 Cal.App.2d 189, 194 [99 P.2d 288].)

■ There is no evidence in the record bearing on the conduct of the deceased driver just prior to the making of the left turn which gives any indication of whether he did it intentionally, either with the knowledge that it was likely to result in serious injury, or with a wanton and reckless disregard of possible consequences. (See *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447].) In the recent case of *Halstead* v. *Paul,* 129 Cal.App.2d 339 [277 P.2d 43], in which a judgment of nonsuit was reversed by this court, in a wilful misconduct case, there was at least some evidence of the driver's conduct and condition for some time prior to the accident. It was held that defendant was guilty of wilful misconduct in driving off the road in his sleep, when he knowingly had gone for a long period with little sleep, and there was evidence of his swerving over the center line of the road at a time shortly before the accident which was evidence from which it could be inferred that he knew it was dangerous for him to drive, but that he nevertheless continued on in reckless disregard of the safety of his guests. In the instant case we have no clew whatever as to the state of mind of the deceased. There is still a line between gross negligence and wilful misconduct. The most that can be reasonably inferred from the circumstances herein, is that the deceased was grossly negligent. The trial court did not err therefore, in granting the nonsuit.

■ Appellant contends that he was prejudiced by the attitude of the trial judge, in that he demonstrated throughout the proceedings that he was convinced that Day had suffered a heart attack which caused his car to go out of control. However, since the case did not go to the jury, the attitude of the trial judge is of no importance, if he arrived at the correct conclusion on the record before him.

Appellant also contends that error was committed in granting the Komstheoft nonsuit, arguing that there is evidence of negligence on the part of this respondent. The tire marks show that he had been traveling in the middle lane imme-

diately before applying his brakes. Vehicle Code, section 526, subdivision (b), provides that a vehicle may not be driven in the middle lane of a three lane highway except (1) when overtaking and passing another vehicle, (2) in preparation for a left turn, and (3) when the center lane is allocated exclusively to traffic moving in the direction the vehicle is traveling and is signposted to give notice of such allocation. Respondent maintains that appellant had the burden of establishing that respondent was not within the exceptions of section 526, subdivision (b). In *Adams* v. *Warren,* 11 Cal. App.2d 344 [53 P.2d 780], it was held that an instruction on section 123, subdivision (c), of the California Vehicle Act (which is substantially the same as the present section 526, subdivision (b)), might not be given unless appellant had established that respondent in using the center lane was not overtaking or passing another vehicle, was not preparing for a left turn, and that the center lane of the highway at that point was not allocated to traffic traveling in respondent's direction. ▮ If evidence is insufficient to warrant an instruction on a vehicle code section, it is insufficient to warrant an inference of its violation on motion for nonsuit, for instructions must be based on evidence or a reasonable inference from the evidence in the record. (*Collins* v. *Jones,* 131 Cal.App. 747, 752 [22 P.2d 39].)

▮ Appellant correctly replies that there was evidence from which it could be inferred that respondent was not making a left turn and that center lane was not at that point allocated to traffic traveling in his direction. There was testimony that there was no cross-road, intersection or entrance to any habitation where a left turn could possibly be made by respondent. The photographic evidence shows that the center lane was not here allocated to traffic traveling in respondent's direction. But may it also be inferred that he was not engaged in passing or overtaking another car? Appellant argues that the fact that no other car than the two which crashed was involved in the accident is proof of that fact. If respondent were passing a car at the time, then it is certainly reasonable to infer that such car could scarcely avoid colliding with respondent when he switched into the east lane which such car would be occupying, and applied his brakes. No skid or brake marks other than those made by the two cars involved, appear in the photographic evidence of the scene. If he were attempting to overtake another car at that point, which we will assume, might have passed in

the east lane before the deceased's car arrived at that point, then that in itself would seem to be negligence proximately contributing to the happening of the accident, for it would indicate that respondent was not keeping a proper lookout for other cars using that lane coming from the opposite direction, since deceased's car was occupying the center lane just prior to the accident, and the view was unobstructed. That there is evidence from which it may be inferred that respondent was traveling at great speed cannot be doubted. There are the heavy skid marks for 50 feet, and despite this application of the brakes, respondent's pickup truck crashed with such violence that the heavy Packard sedan was thrown 24 feet back from the point of impact. If one driver can see, or should see, another approaching in the middle lane at a point in the highway where there is a reasonable possibility that a left turn may be made, then continuance in that lane to within 50 feet of the point of impact at a high speed could certainly be considered as evidence of negligence. The speed in relation to the circumstances here shown to exist gives rise to an inference of negligence which proximately contributed to the happening of the accident. Add to this the evidence that respondent was to some extent under the influence of alcohol from which it may be inferred that his reaction time is slowed, his vision less accurate than normal, and his judgment in some degree impaired.

The question of proximate cause is a question to be determined by the jury unless it can be said as a matter of law that the negligence of respondent in no way contributed to the happening of the accident. (19 Cal.Jur., § 139, p. 732.) It is only in some cases wherein reasonable minds cannot differ, that the court is justified in taking the question of proximate cause from the jury. (*Kostouros* v. *O'Connell*, 39 Cal.App.2d 618, 622 [103 P.2d 1028].) There appear to be sufficient circumstances in the present case from which conflicting inferences may be drawn as to whether or not the conduct of this respondent proximately contributed to the accident.

It is our view that there is sufficient evidence which when considered in the light most favorable to appellant, gives rise to an inference of negligence on the part of respondent Komstheoft proximately contributing to the happening of the accident. The granting of the nonsuit as to the respondent Komstheoft was therefore erroneous.

Judgment of nonsuit affirmed in favor of Mary Day, exe-

cutrix of the estate of Anthony H. Day, deceased. Judgment of nonsuit in favor of Emile Komstheoft reversed.

Nourse, P. J., concurred.

DOOLING, J.—I concur in the order reversing the judgment as to Komstheoft. I dissent from the order affirming the judgment as to Day. The evidence, including the tire marks left on the highway by the automobile driven by Day, would support a finding that Day in broad daylight with the approaching automobile driven by Komstheoft in full view turned rather sharply across the path of the Komstheoft vehicle at a time when it was obviously impossible to avoid being struck by it. If the jury found these facts, as it reasonably could from the evidence, they would satisfy the definition of wilful misconduct: "the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result." (*Meek* v. *Fowler*, 3 Cal.2d 420, 426 [45 P.2d 194].)

The jury could certainly infer from the circumstances that Day's conduct was intentional. (*Wright* v. *Sellers*, 25 Cal. App.2d 603, 613 [78 P.2d 209].) One who intentionally turns into the path of an oncoming vehicle has been held guilty of wilful misconduct where the probability of serious injury is or should be apparent. (*Hoffart* v. *Southern Pac. Co.*, 33 Cal.App.2d 591 [92 P.2d 436]; *Hagglund* v. *Nelson*, 23 Cal.App.2d 348 [73 P.2d 265]; *Francesconi* v. *Balluomini*, 28 Cal.App.2d 701 [83 P.2d 298].)

Appellant's petition for a hearing by the Supreme Court was denied May 18, 1955. Carter, J., was of the opinion that the petition should be granted.