Filed 10/7/15  Estate of Kalous CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

Estate of JOSEPH KALOUS, Deceased.

JANICE GUIDI,

      Petitioner and Appellant,

v.

EDWARD ALAN HESS,

      Objector and Respondent.

E059204

(Super.Ct.No. RPRRS00772)

O P I N I O N

APPEAL from the Superior Court of San Bernardino County.  Raymond L. Haight III, Judge.  Affirmed.

Manning & Kass Elrod, Ramirez, Trester, Daniel B. Herbert and Steven J. Renick for Petitioner and Appellant.

Fullerton, Lemann, Schaefer & Dominick and Thomas W. Dominick for Objector and Respondent.

## INTRODUCTION

Petitioner and appellant, Janice Guidi, appeals from an order after trial[1] admitting to probate the will of decedent dated July 29, l986, which had been filed by objector and respondent, Edward Alan Hess. Guidi contends that the will is a forgery, and in support of that claim, argues that Hess has failed to prove its due execution. She further contends that the trial court erred in failing to invoke the doctrine of equitable estoppel to prevent Hess from utilizing the presumption of due execution.

The judgment and order of the trial court are presumed correct. (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1362.) The order of the trial court must be sustained if there is any substantial evidence in the record to support its findings. (*Federated Mortgage Investors v. Hunt* (1970) 7 Cal.App.3d 371, 377.) We have reviewed the record in light of those principles and have concluded that Hess presented sufficient evidence of due execution and that the trial court did not err in denying Guidi the benefit of equitable estoppel. We will affirm the trial court's orders admitting the will to probate, reinstating the previous order of distribution, and reinstating the order discharging Hess as executor.

---

[1] Hess had obtained a previous order admitting the will to probate, but he failed to give notice of the proceeding to Guidi, decedent's niece. The previous order was revoked in the judgment from which this appeal is taken. Hess does not contest the revocation.

## FACTUAL AND PROCEDURAL BACKGROUND

Joseph Kalous (decedent) died on January 29, 1996. Hess found the subject will[2] among his possessions. The will leaves all of decedent's property to Hess, appoints Hess as executor, and recites the executor's powers. It is signed by "Joseph Kalous." Following the signature is an attestation clause[3] in regular form and the purported signatures of Christine Tomei, Mildred C. Pinc, and Martha Hovorka with their handwritten addresses.

On July 17, 1996, Hess petitioned the court to admit the will to probate. The petition failed to identify either Guidi or James Kalous,[4] a nephew, and neither was given notice of the proceeding. In support of his petition, Hess submitted a form titled Proof of Subscribing Witness signed by Hovorka and another signed by Pinc. Each is signed under penalty of perjury. The court issued a decree of distribution and order discharging Hess as executor on January 16, 1998.

---

[2] The will says the testator is "of CICERO, ILLINOIS," and evidence shows the will was executed in Illinois. However, the parties appear to agree that the court need not concern itself with any difference between the law of Illinois and the law of California.

[3] The attestation clause states: "We certify that in our presence on the date appearing above JOSEPH KALOUS signed the foregoing instrument and acknowledged it to be his Will, that at his request and in his presence and in the presence of each other we have signed our names below as witnesses, and that we believe him to be of sound mind and memory."

[4] James Kalous joined in the petition of Guidi in the trial court, but did not join in this appeal.

On March 10, 2010, Guidi and James Kalous filed a petition to set aside the order for probate and to revoke the probate of the will on the ground that it was a forgery. At trial, numerous witnesses were called,[5] but for purposes of this appeal it is necessary to mention only three. Hess testified that he was familiar with the signature of the decedent and that the signature on the will "looks like" that of decedent.[6] Although her testimony at deposition was somewhat confused and inconsistent, Hovorka did identify her signature on the copy of the will (exh. B) that was attached to a declaration (exh. 18) dated February 10, 2010, in which she disavowed the Proof of Subscribing Witness purportedly signed by her on July 22, 1996. She testified of the declaration disavowing the Proof of Subscribing Witness: "I don't know why I signed this. It's not true. It's not an accurate statement." In addition, the court was at liberty to interpret deposition testimony of Hovorka to identify the other two signatures on the will as those of Tomei

---

[5] Counsel inexplicably offered the Proof of Subscribing Witness of Pinc only for a limited purpose. The clear language of Probate Code section 8224 makes such a declaration admissible if the witness is unavailable, and it need not be further authenticated. Pinc apparently died between the time she executed her Proof of Subscribing Witness and the time of trial and was therefore unavailable as a witness.

[6] The parties each filed appendices on appeal. Guidi's appendix includes the clerk's minutes showing what exhibits were admitted, and whether for a limited purpose, but they do not describe the exhibits, except by number. The reporter's transcript contains no index of exhibits at all. It is probable that some of the exhibits are included in the appendices, but the exhibits in the appendices bear no exhibit numbers to correspond with the clerk's minutes or the reporter's transcript. The briefs contain inadequate references to the record. To complete the record, this court has ordered that the record be augmented with the exhibits, or copies thereof, and the exhibit lists filed by the parties.

and Pinc, both of whom she knew, and both of whom had signed wills for her in the past. James Black, testifying as an expert witness, opined that the signature of the testator on the will was made by the same person as those on exemplar documents proven to be those of Joseph Kalous; that the signature of a witness on the will was made by the same person as those on exemplar documents proven to be those of Tomei; that the signature of another witness on the will was made by the same person as those on exemplar documents proven to be those of Pinc; and that the signature of the third witness on the will was made by the same person as those on exemplar documents proven to be those of Hovorka.

Guidi's counsel conceded in argument that witness Pinc is dead and Tomei fled to Italy before the trial.

Following the trial, the court revoked the previous order admitting the will to probate, but found that the will was duly executed and was entitled to admission to probate. This appeal followed.

THE CONTENTIONS OF THE PARTIES

Guidi first contends that a change in the probate statutes limits the means by which the proponent of a will may establish its due execution. Specifically, former section 372 of the Probate Code[7] provided, in part:

---

[7] All further statutory references are to the Probate Code unless otherwise indicated.

"If none of the subscribing witnesses resides in the county, and the evidence of none of them can be produced, the court may admit the evidence of other witnesses to prove the due execution of the will; *and, as evidence of the execution, it may admit proof of the handwriting of the testator and of any of the subscribing witnesses.*" (Italics added.)

Current section 8253, the successor to section 372, provides, in part:

"If no subscribing witness is available as a witness within the meaning of Section 240 of the Evidence Code, the court may admit the evidence of other witnesses to prove the due execution of the will."

Guidi contends the omission of the italicized language of section 372 in section 8253 must be interpreted to preclude proof of handwriting as a means of authenticating the signatures of the testator and witnesses.

Guidi also contends that it is not sufficient to raise the presumption of due execution merely to authenticate the signatures of the testator and witnesses; the proponent must also establish "the circumstances under which they signed." (*Estate of Burdette* (2000) 81 Cal.App.4th 938, 946.)

Finally, Guidi contends that Hess's fraud in failing to notify her of the 1996 proceedings precluded her from presenting evidence on the issue of due execution of the will, and that Hess should therefore be equitably estopped from relying upon the presumption of due execution.

Hess contends that Guidi's interpretations of the law of due execution are erroneous. He further contends that the trial court correctly refused to apply the doctrine of equitable estoppel because (1) she failed to plead it, (2) she is attempting to use the doctrine offensively, and (3) there was no evidence that Hess intended that his omission be acted upon by Guidi.

**DISCUSSION**

A. *Due Execution of the Will*

The requirements of a duly executed will are set forth in section 6110, which provides, in material part:

"[A] will shall be in writing . . . [¶] . . . [and] shall be signed by . . . [¶] . . . the testator. [¶] . . . [¶] [T]he will shall be witnessed by being signed, during the testator's lifetime, by at least two persons each of whom (A) being present at the same time, witnessed . . . the testator's acknowledgment of the signature or of the will and (B) understood that the instrument they sign is the testator's will."

In a will contest, the proponent of the will (in this case, Hess) has the burden of proof of due execution. (Prob. Code, § 8252.) The proponent must produce each subscribing witness for examination, unless the subscribing witness is not "available as a witness" as defined in Evidence Code section 240. (Prob. Code, § 8253.) Probate Code section 8253 makes an exception to the requirement that "each subscribing witness" appear and testify; it allows "evidence of other witnesses" to prove due execution "if *no*

7

subscribing witness is available as a witness." (Italics added.) *Estate of Burdette*, *supra*, 81 Cal.App.4th at page 945, made it clear, in interpreting Probate Code sections 8224 and 8253, that if *any* subscribing witness is unavailable, other evidence (in that case, testimony of the other witness to the will) is admissible to prove due execution.

Here, the deceased witness, Pinc, was unquestionably unavailable and there was evidence (and a concession by Guidi's attorney) from which the court could find that witness Tomei was unavailable because she was out of the court's jurisdiction and not subject to its process.

It is true that in case of ambiguity in a statute, language present in a predecessor statute and omitted from its successor is a factor which may be useful in interpreting the ambiguous statute. However, Guidi cites no authority for the proposition that the omission of language in a successor statute may be given affirmative effect and this court is aware of none. The first rule of statutory interpretation is that effect must be given to the unambiguous words of the statute.

"'In construing a statute, our fundamental task is to ascertain the Legislature's intent so as to effectuate the purpose of the statute.' (*Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 . . . .) There is a classic sequence in discussing problems of statutory construction, as solid in its approach to the issue of ascertaining textual meaning as the queen's gambit is to safe openings in a game of chess. (See *Halbert's Lumber*[*, Inc. v. Lucky Stores, Inc.* (1992)] 6 Cal.App.4th [1233, 1238] ['There is order in the most

8

fundamental rules of statutory interpretation if we want to find it.  The key is applying those rules in proper *sequence*.'].)  The classic sequence of discussing statutory construction is:  First look at the text; if it's plain and unambiguous, stop there.  If the text is not plain and unambiguous, go to the legislative history.  If there is evidence of clear legislative intent, implement that intent, and stop there.  If there is no clear evidence of intent, use reason, practicality and common sense to ascertain what best approximates the legislative intent.  (See *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 337-338 . . . ; *Halbert's Lumber*, *supra*, 6 Cal.App.4th at pp. 1237-1240; see also *J.A. Jones Construction Co. v. Superior Court* (1994) 27 Cal.App.4th 1568, 1578 . . . [importance of clarity in legislative history].)"  (**Busse v. United PanAm Financial Corp.** (2014) 222 Cal.App.4th 1028, 1037-1038.)

We find no ambiguity.  Nothing in the language of Probate Code section 8253 appears to preclude any of the permitted means of authenticating a document.  (See Evid. Code, §§ 1411-1418.)[8]  The trial court found, on contested but substantial evidence, that

---

[8] At oral argument, counsel for appellant questioned the applicability of these provisions of the Evidence Code.  Probate Code section 8253 permits the court to "admit the evidence of other witnesses to prove the due execution of the will."  Evidence Code section 1412 applies by its terms to cases where "the testimony of a subscribing witness is required by statute to authenticate a writing."  The California Law Revision Commission comment (29B pt. 4 West's Ann. Evid. Code (1995 ed.) foll. § 1412, pp. 455-456) makes it clear that this includes cases involving wills.  Evidence Code sections 1413 through 1418 govern the admissibility of "evidence of other witnesses" to prove due execution.

9

the will and the signatures of the testator and witnesses were authentic.  We may not reweigh that evidence on appeal.

Guidi's reliance on *Burdette* for the proposition that a presumption of due execution arises only upon proof of (1) the signatures of the testator and witnesses and (2) the circumstances under which they signed, is misplaced.  Guidi relies on the following paragraph from *Burdette*:

"Moreover, there is a presumption that a will has been duly executed upon proof of the signatures of the testator and the witnesses.  [Citations.]  'Phrased otherwise, the rule is that proof of the signatures of the testator or testatrix and the witnesses makes out a *prima facie* case of due execution.'  [Citation.] . . .  Petitioner met her burden to establish due execution . . . by proving the decedent's signature and the signatures of the two witnesses on the 1993 will and the circumstances under which they signed."  (*Estate of Burdette*, *supra*, 81 Cal.App.4th at p. 946.)

Guidi reads the last sentence of the paragraph as a statement of the requirements to raise the presumption; it is not.  It is a description of what the petitioner in that case actually proved.  In the first two sentences of the paragraph, the court is at pains to recite well-established law.  The court's citation of *Estate of Pitcairn* (1936) 6 Cal.2d 730 is telling.  In *Pitcairn*, the will lacked an attestation clause and bore only the signatures of the testator and two witnesses.  One of the witnesses testified that she was out of the room when the testator signed, and that she was asked only to sign "a piece of paper."

10

(*Id.* at p. 731.)  The *Pitcairn* court declared:  "The rule is well established that a regular and complete attestation clause makes out a *prima facie* case of due execution of the will."  (*Id.* at p. 732.)  It went on to hold that even in the absence of an attestation clause, proof of the signatures of two witnesses gives rise to the presumption of due execution, and that the trier of fact may weigh the presumption against other evidence, even if a witness testifies adversely to the will.  (*Id.* at p. 734.)

The will here does include a regular and complete attestation clause.  Substantial evidence supports the presumption of due execution, and the presumption itself is substantial evidence supporting the court's decision finding the will valid.

B.  *Equitable Estoppel*

In concluding that the doctrine of equitable estoppel should not apply, the trial court reviewed the evidence that a different result might have been obtained if Guidi had been able to contest the will when it was first offered for probate.  The court found that, not only was it improbable that Guidi would have been able to establish a lack of due execution, but also that, in light of the relations between the testator and the parties, it was probable that Joseph Kalous intended the contested document to be his will.  In other words, the court found that it was improbable that Guidi would have prevailed in her contest of the will had she been properly notified of the proceedings in 1996.

It is an essential element of estoppel that the party relying on it has been prejudiced by the other party's acts.  (*Kindig v. Palos Verdes Homes Assn.* (1939) 33

11

Cal.App.2d 349, 354.)  The court found that Guidi did not establish that element.

Accordingly, we affirm the decision of the trial court not to apply equitable estoppel.

**DISPOSITION**

The judgment is affirmed.  Hess shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CUNNISON_____

J.*

We concur:

RAMIREZ_____

    P. J.

CODRINGTON_____

    J.

---

* Retired judge of the Riverside Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.