[Civ. No. 20976. Second Dist., Div. One. Dec. 6, 1955.]

KAYLIN TERESA HARLOW, a Minor, etc., et al., Respondents, v. MAX VAN DUSEN et al., Defendants; GLADYS OXFORD, as Administratrix, etc., Appellant.

Early, Maslach, Foran & Williams, Victor E. Williams and Donald J. Pierr for Appellant.

Toxey H. Smith for Respondents.

DORAN, J.—The administratrix of the estate of Neal Calvin Oxford, deceased, is here appealing from a judgment, after trial by jury, in favor of the respondents, awarding damages for the deaths of respondents' husbands and fathers, respectively, which occurred while the latter were riding as

guests in a Studebaker automobile driven by Neal Oxford, deceased. The action herein is based upon the theory of wilful misconduct on the part of Neal Oxford who, along with the two guests Francis Harlow and Marco Piscitelli, died as a result of the accident.

The accident happened when the car, of which the three decedents were the sole occupants, traveling west along Highway 99 near Pomona, went into a spinning skid onto the wrong side of the highway, colliding with another car traveling in the opposite direction. Max Van Dusen, driver of the other car, named as a defendant, is not a party to this appeal, a nonsuit having been granted at the conclusion of the plaintiffs' case.

Francis Harlow, Marco Piscitelli and Neal Calvin Oxford were friends working together at the Pomona Convair plant, and on the afternoon of March 19, 1953, Harlow and Piscitelli, accompanied by several other men, "played a few games of ping pong at the plant, and then, as they had done on previous occasions, set out on an evening of social relaxation," to quote from appellant's brief. "They first went to a place called the French Village, where they were joined by Neal Oxford. . . . At the French Village they had a few beers and played shuffleboard. Later on, five of them went to another resort called the Alibi Supper Club . . . (where) the men conversed and listened to the orchestra and apparently had one or more drinks. According to Wesley West, one of those on the party, no one was intoxicated when he left the Alibi at about midnight. . . . West, . . . was the last of the party to see his three friends alive."

As disclosed by the record, the three decedents, Oxford, Harlow and Piscitelli, were next observed after midnight riding in Oxford's car, with Oxford driving, a few seconds before the crash. The three men were sitting in the front seat. The Oxford car was proceeding west on United States Highway 99, in an area known as Kellogg Hill. Witness Gerald Murphy, who was also proceeding west, by means of the rear view mirror, observed the Oxford car directly behind and in the right-hand lane, just before Oxford passed Murphy's car.

According to Murphy's testimony, summarized in respondents' brief, "The night was dark, a light rain or mist was falling and the highway was slick all over. Murphy's car was traveling about 50 miles an hour when Oxford's car swung into the left lane to pass him. . . . a conservative esti-

mate of its speed would be 65 to 70 miles an hour. About two or three seconds after Oxford passed Murphy, his car went into a spin, swung around twice in a clockwise direction, crossed over the double line and crashed into the eastbound Van Dusen automobile on the other side of the road. At no time before the accident did the red brake lights of Oxford's car go on."

It appears that the Kellogg Hill, a four-lane highway, proceeds in a series of three to four curves to the crest of the hill towards which the Oxford car was proceeding. State Highway Patrol Officer McArthur roughly estimated the grade at "from 5 to 7 percent, maybe 10 percent," and testified, "We consider them rather sharp curves so far as an accident hazard is concerned."

The road in the accident area has warning signs reading, "Slippery When Wet," also "Slow," "Downgrade," and signs indicating curves in the road. The accident occurred between two of the curves, about 100 to 150 feet west of one curve and just before the road bent into the succeeding curve. The night was dark, and the road had no lights or other illumination. The officer found no skidmarks, and did not smell alcohol on any of the parties. Oxford had frequently used the Kellogg Hill highway.

The jury found a verdict of $55,336.25 in favor of the Harlow heirs, and $33,866.47 for the Piscitelli heirs. Defendant's motion for a new trial was denied, followed by the present appeal from the judgment against the Oxford estate.

It is appellant's contention that, at most, Oxford's conduct did not amount to wilful misconduct but was no more than negligence, under the guest law. Appellant also urges that the questions whether the guests, Harlow and Piscitelli, were guilty of contributory negligence, or assumed the risk attendant upon the ride, should have been submitted to the jury, and that it was reversible error for the trial court to refuse to give instructions on such issues.

Under the provisions of section 403 of the Vehicle Code, there can be no recovery for the injury or death of a guest riding in a vehicle "unless the plaintiff in such action establishes that such injury or death proximately resulted from the intoxication or wilful misconduct of said driver."

As pointed out in respondents' brief, the term "wilful misconduct" has been given a broad interpretation. In some cases it has been defined as the intentional doing of an act either with a knowledge that serious injury is a probable

result or the intentional doing of an act with a wanton and ruthless disregard of its possible result." (*Jones* v. *Harris*, 104 Cal.App.2d 347 [231 P.2d 561].) Reckless driving and wilful misconduct are held to be synonymous terms, and as said in *Hastings* v. *Serleto*, 61 Cal.App.2d 672 [143 P.2d 956], such reckless driving or wilful misconduct "is essentially one of fact for determination by the fact finder."

Although, as stated by appellant, excessive speed alone is not necessarily wilful misconduct, nevertheless, as pointed out in respondents' brief, "speed is an important element to be considered since it, coupled with other circumstances, may constitute wilful misconduct." In several reported cases, a speed of 60 miles per hour has been held to constitute wilful misconduct when conjoined with such facts as a damp highway, a misty night requiring windshield wipers, etc. *Hallman* v. *Richards*, 123 Cal.App.2d 274 [266 P.2d 812] is an example of such holdings, involving a factual situation not dissimilar from that here presented.

It is unnecessary to cite authorities in support of the well established rule that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury.

In the instant case, the record discloses substantial evidence of wilful misconduct as defined by the authorities. As summarized in respondents' brief, "Oxford was a driver familiar with the road and its hazards—the fact that it was curving and winding, that he was approaching another curve and the crest of a hill and that the road was slippery when wet. Yet, on a dark, wet, slippery night, he proceeded to pass a car at a speed between 65 to 70 miles an hour, heedless of warning signs and the approach of an oncoming car."

From such evidence the jury could well believe that the case was one coming within the purview of *Francesconi* v. *Belluomini*, 28 Cal.App.2d 701, 705 [83 P.2d 298], where it is said: "To us it seems clear that one who, while driving an automobile, knowingly flirts with danger and without necessity or emergency compelling him, 'takes a chance' on killing or injuring himself and others, who may be so unfortunate as to be riding with him, is guilty of wilful misconduct." The question whether Oxford's conduct, under existing circumstances, was such as to constitute wilful negligence, was

essentially one of fact which a jury has resolved in favor of the respondents.

■ The appellant's contention that the trial court erred in not instructing the jury on the subjects of contributory negligence and assumption of risk on the part of Oxford's guests, is without merit. As pointed out in the respondents' brief, there was no evidence to support the affirmative defenses of contributory negligence or assumption of risk, matters as to which the appellant had the burden of proof. "Concerning the conduct of Harlow and Piscitelli, nothing is shown except that in the fleeting glimpse of them caught by witness Murphy, a few seconds before the accident, they were seated in the front seat of Oxford's car. Nothing more. Under the circumstances the only evidence of their conduct was the rebuttable presumption of due care provided for in Section 1963(4) of the Code of Civil Procedure." It is not error to refuse to give a proposed instruction where there is no evidence to support the theory upon which it is drawn. (*Davenport* v. *Stratton,* 24 Cal.2d 232 [149 P.2d 4].)

As before indicated, there is substantial evidence in support of the verdict and judgment, and the record reflects no reversible error.

The judgment is affirmed.

White, P. J., and Nourse (Paul), J. pro tem.,* concurred.

A petition for a rehearing was denied December 30, 1955. Nourse (Paul), J. pro tem., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.