[Civ. No. 9109.   Third Dist.   Sept. 26, 1957.]

ARTHUR MUNSON, as Administrator, etc., Respondent, v. ARTHUR R. FRIEDMAN, as Administrator, etc., Appellant.

74

Honey, Mayall & Hurley, Edwin Mayall and Patricia Lane for Appellant.

Paul Friedman and George Olshausen for Respondent.

WARNE, J. pro tem.*—This is an appeal from a judgment entered after a jury verdict in favor of the estate of Richard Arthur Munson and Alda Anne Munson against the estate of Francis Katheiser in an action for wrongful death, and from an order denying a motion for judgment notwithstanding the verdict.

The Munsons were killed when an automobile driven by Francis Katheiser, in which the Munsons were guests, collided with a freight train. All of the occupants of the automobile were killed. The sole question on this appeal is the sufficiency of the evidence to sustain an implied finding of the jury that Francis Katheiser was guilty of serious and wilful misconduct in the manner in which he drove the automobile.

The accident occurred at 1:28 a. m. on April 29, 1951, at the intersection of the Santa Fe Railroad tracks and Monte Vista Road in Stanislaus County. Monte Vista Road runs east and west. The Santa Fe tracks, at the point where they intersect Monte Vista Road, run in a northwest to southeast direction. The tracks bisect the road at about a 45-degree angle. The railroad crossing is unguarded except for a reflector warning sign approximately 450 feet east of the intersection and a crossed-bars railroad sign at the tracks. The road bed is elevated. Some 200 feet east of the tracks Storey Road intersects Monte Vista Road. Buildings and trees on the corner of the two streets tend to obscure the visibility to the north of a person driving west on Monte Vista Road until

*Assigned by Chairman of Judicial Council.

he is about 250 feet from the tracks. From this point one could see ". . . down the tracks here, clear down by the next cross-over," or, in other words, the next street that crosses the railroad.

Francis Katheiser, his wife Gladys, his sister Alda Anne Munson and her husband Richard Arthur had spent the evening at a friend's home. They left at the end of their visit in Francis' new Mercury automobile. It was stipulated at the trial that Francis was in full possession of his faculties when the group left. In order for them to proceed to their respective homes it was necessary for them to cross the railroad tracks. Francis Katheiser was familiar with the area and the crossing. Approximately 100 feet from the intersection 60 feet of skid marks were laid down. The automobile collided with the right front end of the engine of the freight train which was traveling in a southerly direction and was wedged in the engine. The car was carried about 2,250 feet before the train which was composed of a three-unit diesel engine and 80 cars could be stopped. All the occupants of the car were thrown from it, and all were killed.

The engineer of the train testified that he first saw the lights of the car reflected on the tracks when the train was about 250 feet from the crossing, and he first saw the headlights only as they emerged from behind the obstructions on the corner of Storey Road and Monte Vista Road at a time when the train was about 150 feet from the crossing. He estimated the speed of the automobile at about 50 miles an hour. He then sounded his horn and applied his brakes. The car swerved, slowed down and then ". . . straightened up and dived right into the engine . . ." The engineer testified that it was a terrific impact. Prior to the accident the engineer had sounded the horn with two long blasts, a short one and another long one some 1,474 feet from the crossing. He testified that the bell on the locomotive was sounding constantly. The engine was lighted and it had a headlight which threw a beam of light sufficient to see a human being some 800 feet ahead of the train. The train was traveling approximately 49 miles an hour prior to the emergency.

William H. Smith, an officer with the California Highway Patrol, testified that once a car passed the intersection at Storey and Monte Vista, visibility to the tracks was clear. His testimony also indicated, as above noted, that the train would also be visible through the trees before one reached the blind spot near the intersection.

The defense offered no testimony. At the conclusion of the plaintiff's case a motion for a nonsuit was made and denied. The defense then asked for a directed verdict which was likewise denied, as was a motion for judgment notwithstanding the verdict, which was made subsequently.

■ Wilful misconduct, as such term is used in the automobile guest law, consists in doing something that ought not to be done under the circumstances, or failing to do something under such circumstances which shows either knowledge that serious injury to a guest probably will result or a wanton and reckless disregard of the possible results. (*Carmean* v. *Bridges*, 142 Cal.App.2d 99 [297 P.2d 671].) ■ Wilful misconduct depends on the facts of a particular case and necessarily involves intentional or wanton conduct with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom. (*Emery* v. *Emery*, 45 Cal.2d 421, 426 [289 P.2d 218].) ■ Where there is no direct evidence of the intent of the culpable person, it must be shown that there are circumstances from which it can be inferred that the deceased acted in a wanton and reckless disregard for the safety of his guests. (*Reese* v. *Day*, 131 Cal.App.2d 730 [281 P.2d 263].) It is never enough that the deceased driver was grossly negligent.

■ Since there is no evidence, and no possibility of securing any evidence to show that the deceased driver had an actual intent to injure his guests, respondent was then required to show that there are circumstances from which the jury could reasonably infer that the deceased driver acted in a wanton and reckless disregard of the safety of his guests, thus overcoming the presumption of reasonable care. In *Wright* v. *Sellers*, 25 Cal.App.2d 603, 613 [78 P.2d 209], it is said: "It is sufficient if the act, or the failure to act, be done or omitted under such circumstances as would justify the reasonable inference that the driver should have known that injury to his guest was a probable result . . ." ■ Applying this rule to the instant case, we feel that the facts and circumstances were sufficient to justify the jury in finding the driver guilty of wilful misconduct. The evidence discloses that the driver of the vehicle was familiar with the area and the railroad crossing. The tracks were elevated. The headlight on the engine was strong enough to illuminate a person 800 feet down the track, and its rays of light extended some considerable distance further. There were other lights on the engine. The engineer had sounded the horn on the engine 1,474 feet

from the intersection, and in addition the engine's bell was ringing continuously right up to the moment of the impact and had been ringing for some considerable distance. It was a clear night. The speed of the train was 49 miles an hour. There is evidence that the train would have been visible before the Storey Road blind spot. The engineer testified that he first saw the headlights as they came from behind the structures at the Storey Road intersection, and he estimated that the car was being driven at approximately 50 miles per hour. The car laid down 60 feet of skid marks terminating 39 feet from the tracks. There is a railroad crossing warning sign 450 feet east of the crossing. The engineer testified that, ". . . it looked like he [the driver] sort of tried to turn up this road here, then straightened up and dived right into the engine, slowed up a little bit." It is obvious that the car was traveling at a rate of speed which prevented it from being stopped before colliding with the engine. The automobile and the train were traveling at approximately the same speed. The rays from the engine's headlight must have been visible at the crossing for at least 800 feet.

Under the circumstances it is not conceivable that any person, using the ordinary senses, could have failed to be warned of or to observe the approaching train. Notwithstanding, the driver of the car continued to approach the crossing at a rate of speed which prevented him from avoiding a collision with the train. The jury could reasonably have inferred that the driver of the car was trying to beat the train to the crossing and, in doing so, acted in a wanton and reckless disregard of the safety of his guests.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 20, 1957. Schauer, J., was of the opinion that the petition should be granted.