[Civ. No. 26149. Second Dist., Div. Two. Feb. 5, 1963.]

CONSTANCE ADELE JONES, a Minor, etc., Plaintiff and Appellant, v. THOMAS EUGENE AYERS et al., Defendants and Respondents.

648

Earl A. Barnes for Plaintiff and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and J. H. Peckham for Defendants and Respondents.

ASHBURN, J.—Constance Adele Jones, a minor, sues through her guardian *ad litem* to recover damages for personal injuries received by her while riding as a guest in an automobile driven by defendant Thomas Eugene Ayers on the evening of January 30, 1960. The car belonged to M. C. Bowers, who had given his son Rudolph Bowers express or implied permission to drive it on the occasion in question, and Rudolph in turn had given permission to his friend, Thomas Eugene Ayers, to drive it and, as stated, Ayers was so engaged at the time of the accident. Both Thomas Eugene Ayers (Tom) and Rudolph Bowers (Rudy) were minors, aged 15 and 17 years respectively, and Ayers had only an instruction permit (Veh. Code, § 12509). His father, Joseph Ayers, had signed and verified his application for a driver's license and thus had rendered himself liable for damages for

negligence or wilful misconduct of his son when operating a motor vehicle (Veh. Code, § 17707). Plaintiff sued both of the Ayers and both of the Bowers, as well as Donald Alan Story, who was driving the other car involved in the accident.

Plaintiff's amended complaint contained five causes of action and prayed for judgment against all defendants on each count. The court directed a verdict in favor of each defendant other than Story and hence this appeal taken by plaintiff. The jury exonerated Story of all charges.

The first count of the amended complaint charged mere negligence of Tom, the driver. It was stipulated that plaintiff was his guest in the car. Of course, this count stated no cause of action against any defendant, for section 17158, Vehicle Code, says: "No person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle *or against any other person legally liable for the conduct of the driver* on account of personal injury to or the death of the guest during the ride, unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or wilful misconduct of the driver." (Italics added.) See *Weber* v. *Pinyan,* 9 Cal.2d 226, 238 [70 P.2d 183, 112 A.L.R. 407]; *Bowman* v. *Collins,* 181 Cal.App.2d 807, 814 [5 Cal.Rptr. 776]. ██ It is said in *Benton* v. *Sloss,* 38 Cal.2d 399, 403 [240 P.2d 575]: "Section 403 [17158] bars actions against the 'driver' of a vehicle or against 'any other person legally liable for the conduct of such driver.' The phrase 'person legally liable' for the driver's conduct is clearly intended to cover cases in which the owner is vicariously liable for the driver's conduct because of the relationship of the parties, as principal-agent, or because of imputed negligence under section 402 [17150]. (*Stober* v. *Halsey, supra* [88 Cal.App.2d 660 (199 P.2d 318)]; *Stephen* v. *Spaulding,* 32 Cal.App.2d 326 [89 P.2d 683].) Section 403 does not limit the common-law liability of the owner of a vehicle for his own negligence as owner." There was no error in instructing a verdict in favor of all defendants so far as this count is concerned.

The second cause of action alleged wilful misconduct of Tom Ayers, the driver; there was and is no claim of intoxication. ██ As the rule governing a directed verdict is the same as nonsuit, all evidence and all legitimate inferences

650

favorable to appellant-plaintiff must be indulged upon an appeal from a judgment directed in favor of defendant. (*Estate of Lances*, 216 Cal. 397, 400 [14 P.2d 768]; *Estate of Sharon*, 179 Cal. 447, 459 [177 P. 283]; 2 Witkin, California Procedure, § 125, pp. 1857-1858.)

 Wilful misconduct is thus defined in *Goncalves* v. *Los Banos Mining Co.*, 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833]: ''Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury to the guest probably will result or with a wanton and reckless disregard of the possible results. (*Gillespie* v. *Rawlings*, 49 Cal. 2d 359, 367 [317 P.2d 601].)'' It has been repeatedly held that *mere* failure to perform a statutory duty such as obeying a stop sign at an intersecting highway is not substantial evidence of wilful misconduct. (See *Meek* v. *Fowler*, 3 Cal.2d 420, 425 [45 P.2d 194]; *Porter* v. *Hofman*, 12 Cal.2d 445, 448 [85 P.2d 447]; *McLeod* v. *Dutton*, 13 Cal.App.2d 545, 548-549 [57 P.2d 189]; *Francesconi* v. *Belluomini*, 28 Cal. App.2d 701, 705 [83 P.2d 298]; *Flannery* v. *Koch*, 103 Cal. App.2d 55, 57 [228 P.2d 580]; *Stewart* v. *Kelly*, 68 Cal.App. 2d 122, 126 [155 P.2d 850].) 2 Witkin, Summary of California Law (7th ed.), section 362, page 1563: ''Driving at an excessive speed, taking chances at an intersection, inattention to driving, or similar acts, may constitute gross negligence, but do not amount to wilful misconduct. (*Meek* v. *Fowler* (1935) 3 Cal.2d 420 [45 P.2d 194]; *Howard* v. *Howard* (1933) 132 Cal.App. 124 [22 P.2d 279]; *Forsman* v. *Colton* (1933) 136 Cal.App. 97 [28 P.2d 429]; *Ceikin* v. *Goldman* (1935) 5 Cal.App.2d 162 [42 P.2d 719]; *Walker* v. *Bacon* (1933) 132 Cal.App. 625 [23 P.2d 520]; *Shipp* v. *Lough* (1940) 41 Cal.App.2d 820 [107 P.2d 661]. . . .'' But it may be such when coupled with other circumstances. ''Although, as stated by appellant, excessive speed alone is not necessarily wilful misconduct, nevertheless, as pointed out in respondents' brief, 'speed is an important element to be considered since it, coupled with other circumstances, may constitute wilful misconduct.' In several reported cases, a speed of 60 miles per hour has been held to constitute wilful misconduct when conjoined with such facts as a damp highway, a misty night requiring windshield wipers, etc. *Hallman* v. *Richards*, 123 Cal.App.2d 274 [266 P.2d 812] is an example of such holdings, involving a factual situation not dissimilar from that here presented.'' (*Harlow* v. *Van Dusen*, 137 Cal.App.2d 547, 550 [290 P.2d 911].)

In considering attending circumstances it is important to disregard false quantities in the problem. ▆▆ For instance, Ayers was driving under an instruction permit which required, as does the statute (Veh. Code, § 12509), that when driving the holder be "accompanied by, and under the immediate supervision of, a licensed driver 18 years of age or over." Rudy Bowers had a driver's license but he was not yet 18 years of age, nor had anyone else in the car reached that age. It does not appear, however, that Ayers knew that Rudy was not 18 or over. He thought he was 18 and apparently heard him say "that it was now legal for Tom to drive when Rudy himself was in the car." This left Ayers in the same position as if he were driving without a license. But that fact is not evidence of incompetence to drive or of negligence in so doing. (*Lemuth* v. *Long Beach Unified Sch. Dist.*, 53 Cal.2d 544, 554 [2 Cal.Rptr. 279, 348 P.2d 887]; *Strandt* v. *Cannon*, 29 Cal.App.2d 509, 518 [85 P.2d 160]; *Shmatovich* v. *New Sonoma Creamery*, 187 Cal.App.2d 342 344 [9 Cal.Rptr. 630].) On the other hand, it does enter into the question of negligent entrustment, a problem presented by the third cause of action and discussed *infra*. So, in determining whether there is substantial evidence in this record of wilful misconduct of Ayers, we must ignore the absence of a license and center upon the things done or omitted by him.

Viewing the evidence in the best light for appellant the following facts were established at the trial. This was a Saturday evening "double date" in which Tom had with him his friend, the plaintiff, and Rudolph's guest was Pamela LaPorte—all of them under 18 years. Plaintiff, who was 15 years old, was a guest in the front seat of a 1953 Ford sedan driven by Tom Ayers, who was also 15 years old. The 1953 Ford was owned by M. C. Bowers, and his son Rudolph, who was 17 years old, was the principal user of the car. Rudolph was riding in the back seat with Pamela at the time of the accident. He had entrusted the driving of the car to Tom a few minutes before the accident occurred. The other car involved in the accident was a 1956 Chevrolet sedan driven by Donald Story, who was accompanied by his "date." The accident occurred when Tom, who was driving the Ford eastbound on Pine Avenue, a dark, two-lane country road, went through a boulevard stop sign without stopping, at Euclid Avenue, a four-lane divided highway, and collided with the

Chevrolet automobile driven by Donald Story, which was southbound on Euclid Avenue.

Tom and Rudolph were classmates at high school. Before the day of the accident Rudolph had seen Tom drive a car only on two occasions. On both of these occasions Rudolph was at school when he saw Tom drive up accompanied by one of his parents. Rudolph knew that Tom did not have a regular vehicle operator's license, but instead had an instruction permit. Rudolph was also aware that Tom's instruction permit authorized him to operate a motor vehicle only when accompanied by and under the immediate supervision of a driver 18 years of age or over, who himself was licensed to operate the vehicle. Tom's father, Joseph Ayers, had assisted Tom in obtaining his instruction permit by signing and verifying the application for the permit just 14 days before the accident occurred. During that period of 14 days, he had driven his father's 1957 Ford pickup truck, under the supervision of his father to and from his father's business five days a week or a distance of approximately 100 miles. He had driven his father's Mercury automobile, under the supervision of one of his parents, on four occasions to school.

Before arriving at Pamela LaPorte's house on the evening of the 30th, Tom asked to drive the car and Rudolph refused to allow him to do so; however, Rudolph did allow Tom to drive a distance of about 2 miles between Pamela's house and plaintiff's house. Plaintiff had never seen Tom drive a car before, but shortly after getting in the car Rudolph told her that it was now legal for Tom to drive while he (Rudolph) was in the car.

Rudolph drove the car after leaving the plaintiff's house, and as they drove eastward through Orange County toward the area where the accident occurred in San Bernardino County, Tom on several occasions asked Rudolph to let him drive the car. As he had done earlier in the afternoon and evening, Rudolph refused to allow Tom to drive. Rudolph testified upon deposition taken before trial that his several refusals to allow Tom to drive were because it was getting dark and he was afraid Tom would get in an accident. In his testimony at the trial Rudolph attributed his several refusals to allow Tom to drive to the fact that he did not want him to do so in traffic. Rudolph continued to drive through the hilly country until he reached a point near Chino, California, where the land flattened out; he there stopped the car

and changed positions with Tom, and entrusted the driving to him.

Tom had never been on Pine Avenue or Euclid Avenue; he was driving the 1953 Ford sedan eastbound on a two-lane country road, on a pitch-dark night, approaching Euclid Avenue, a four-lane divided highway. As he approached Euclid at a point approximately 300 feet before reaching the intersection, he observed a sign which was posted on the right-hand side of the road and read "stop ahead." As he came closer, at a point between 150 and 175 feet from the intersection, the words "stop ahead" were painted on the pavement. He passed another "stop ahead" sign at a point about 75 feet from the intersection. At the trial Tom testified that he recalled seeing the words "stop ahead" painted on the pavement as he approached the intersection and that he saw the boulevard stop sign. In spite of the fact that he saw these warnings, Tom did not stop, but entered the intersection going very fast, according to defendant Story.

Tom testified at his deposition, which was taken approximately six months after the accident, that he had no recollection of any of the events leading to the accident and did not even think he was driving at the time of the accident. At the time of trial Tom testified that he had recovered his recollection four to five months earlier and that he recalled all of the circumstances leading up to the accident, and the accident itself, but that he still did not recall the events immediately following the accident. He did not advise his counsel until the second day of trial that he had gotten his memory back some four or five months earlier.

There was nothing unusual happening in or about the car that Ayers was driving and there was no explanation in the evidence of any reason for his charging at a high rate of speed through three stop warnings that he had seen.

The recent decision in *Goncalves* v. *Los Banos Mining Co.*, *supra*, 58 Cal.2d 916, has applied the concept of wilful misconduct in such manner as to be well nigh conclusive in the case before us. In that instance Menezes, the driver of the car in which plaintiff's decedent was a guest, was traveling at a speed of about 60 miles per hour, 5 miles in excess of the prima facie speed limit. "The stop sign was plainly visible, and when they were over 200 feet from the intersection decedent said to Menezes, 'Joe, look, there is a stop ahead.' Menezes did not look to his right or left as he neared the intersection and did not apply his brakes until imme-

diately before the impact. He did not wear glasses and had not had any problem with his vision prior to the accident.'' (P. 918.) The court said, at page 918: ''The jury could have found that Menezes knew of the existence of the stop sign in sufficient time to avoid a collision by reducing his speed or stopping but that he decided to ignore the sign and proceeded into the intersection without attempting to abate his excessive rate of speed, without looking to the right or left, and without taking any other action designed to discover or avoid colliding with a vehicle approaching the intersection on Ortegalita. The evidence is sufficient to support the jury's implied finding that Menezes drove his automobile with a wanton and reckless disregard of the possible results. [Citations.] Several cases holding that in the circumstances there involved it was not wilful misconduct to go through a stop sign are factually distinguishable.'' ■■ We have at bar a combination of high speed, knowledge of stop signs, an opportunity to slow the car, no apparent attention paid to the stop sign, an unexplained entry into the intersection without stopping or reducing speed, no looking to right or left, no discovery of the vehicle approaching on Euclid Avenue, and we have concluded that from the standpoint of the evidence most favorable to plaintiff the proof was sufficient to support a jury's implied finding that Ayers drove his automobile with wanton and reckless disregard of the possible consequences, and hence was guilty of wilful misconduct. From this it follows that the exoneration of defendants (other than M. C. Bowers) upon that charge and the granting of a directed verdict to each of them is erroneous.[1]

■■ M. C. Bowers cannot be held under Vehicle Code section 17150, ''imputing to the owner of a vehicle liability for negligent operation, for, in the absence of a principal-agent relationship between the owner and the driver, the owner is not liable for the driver's wilful misconduct. (*Weber* v. *Pinyan,* 9 Cal.2d 226, 238 [70 P.2d 183, 112 A.L.R. 407].)'' (*Benton* v. *Sloss, supra,* 38 Cal.2d 399.)

As there must be a retrial we consider other questions presented upon this appeal which will doubtless arise again upon such new trial.

The third count of the complaint charges negligence of Rudy Bowers in entrusting the driving of the car to Thomas

---

[1]Different considerations apply to Rudolph Bowers, as will be seen, but the result is the same.

Ayers. This also raises by implication the question of liability of the owner, M. C. Bowers, for the acts of his permittee, the son, Rudolph. The question of negligent entrustment is one of common law liability and the obligation of the lending owner, if any, is one of statutory liability. The cases develop this distinction.

The court in *Souza* v. *Corti*, 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861], held that an owner who permits another to drive his automobile impliedly authorizes him to delegate the use of it, such as the driving, to a subpermittee selected by himself, though that be done without knowledge or express authority of the owner, and the owner assumes the statutory liability of a permittor with respect to the negligence of the subpermittee (Veh. Code, § 17150), but the liability of the original permittee who negligently entrusts the use or operation of the car to another is placed upon common law principles of agency.

The owner of the car involved in the *Souza* v. *Corti* case was Joseph Gigli, who loaned it to his son, Arthur. Arthur, contrary to his father's instruction that he should not lend the car to anyone else, permitted his friend, the defendant Corti, to drive it in his absence. Through Corti's negligence an accident occurred and plaintiffs were injured. At page 456, the court said: "The principal question is whether Joseph Gigli, the owner of the Dodge car, is liable in damages for the injuries sustained by the plaintiffs pursuant to the statute above quoted. He contends that he is not liable because he had not given express permission to Corti to drive the car and that permission so to do may not be implied for the reason that he instructed his son Arthur not to lend the car to anyone else." Reviewing the statute (then Veh. Code, § 402),[2] the court stressed the words "using or operating the same," which also appear in the present section, number 17150, and quoted from a New York case, saying that " '[w]e cannot hold that "using" and "operating" are interchangeable or synonymous words. If the owner chooses to intrust his car to another person, he invests such person so long as he uses the car, with the same authority in regard to the manage-

[2]Veh. Code, § 402: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages."

ment of the car which the owner has. That authority includes the right to select the operator. The statute so provides in unmistakable language.' '' (P. 457.) Again quoting another New York case (*Grant* v. *Knepper*, 245 N.Y. 158 [156 N.E. 650, 54 A.L.R. 845]), the court said, at page 459: '' 'Carucci did not abandon the car or its use when he surrendered to another the guidance of the wheel. He was still in charge of the truck, and was using it with the permission of the master, and even in the master's business. He did not cease to use it, and use it with permission, though the method of operation may have been illegal or forbidden.' '' At page 460, the court further said: ''In the present case the use which was being made of the borrowed car at the time of the accident was the use which was contemplated by the owner. Any secret restrictions imposed by him on the manner of its use do not negative the controlling fact that it was being used with the owner's permission at the time of the accident. Violations of such restrictions may not be said to cause a revocation of the permission. Liability of the defendant owner in this case pursuant to section 402 of the Vehicle Code is therefore established.'' All of the foregoing was addressed to the liability of the owner, the original permittor.

As to the liability of Arthur Gigli, the owner's permittee, the court held, at page 461: ''As to the liability of the defendant Arthur Gigli, the record shows that defendant Corti took possession of the Dodge car for the use, benefit and accommodation and under the direction of Arthur and for the purpose of taking it to Rocca's for Arthur. Under these circumstances Arthur was the principal and Corti was his agent. The negligence of the latter was therefore imputable to Arthur.''

The *Souza-Corti* doctrine of liability of the owner-permittor was restated and applied in *Peterson* v. *Grieger, Inc.*, 57 Cal.2d 43, 54 [17 Cal.Rptr. 828, 367 P.2d 420].

*Benton* v. *Sloss, supra,* 38 Cal.2d 399, was a case of negligent entrustment by the owner, a car dealer, to a minor who was a prospective purchaser. Sloss was the owner and Jay the prospect. While he was driving an accident occurred and plaintiff, a guest in the car, was injured. In her action for damages judgment went against both Sloss and Jay. Sloss alone appealed and the judgment was affirmed. Sloss claimed that although Jay was guilty of wilful misconduct he, as owner, was absolved from liability by the guest statute (then Veh. Code, § 403). The court held against this contention, saying, ''there was no showing that Jay was Sloss' agent,''

citing *Stober* v. *Halsey,* 88 Cal.App.2d 660, 665 [199 P.2d 318], a case involving liability of an owner who was riding in the car when driven by another,—not the *Benton* case or this case. It also held that the driver's wilful misconduct could not be imputed to the owner under section 402. Thus the owner's liability, if any, was shown to be one arising under common law and not from statute. The court then pointed out that plaintiff sought to hold Sloss for his own negligence and not under section 403 or section 402, saying: "Section 403 bars actions against the 'driver' of a vehicle or against 'any other person legally liable for the conduct of such driver.' The phrase 'person legally liable' for the driver's conduct is clearly intended to cover cases in which the owner is vicariously liable for the driver's conduct because of the relationship of the parties, as principal-agent, or because of imputed negligence under section 402. (*Stober* v. *Halsey, supra*; *Stephen* v. *Spaulding,* 32 Cal.App.2d 326 [89 P.2d 683].) Section 403 does not limit the common-law liability of the owner of a vehicle for his own negligence as owner." (P. 403.) Again, at page 404: "The controlling question, therefore, is whether, Sloss was negligent and if so whether his negligence was a contributing cause of the accident." This was held to be a question of fact upon which the jury's verdict could not be upset. So it appears that this decision does not affect the owner's statutory liability but merely recognizes the common law obligation arising from the owner's personal negligence. That this is true is emphasized by failure of the opinion to mention *Souza* v. *Corti, supra.* Neither *Benton* v. *Sloss, supra,* nor *Nault* v. *Smith, infra,* 194 Cal.App.2d 257, 267 [14 Cal. Rptr. 889], dealt with a subpermittee, and the liability of the owner for his acts.

The *Nault* case involved negligent entrustment by an owner to her minor child whose negligent driving resulted in injury to a guest in the automobile. It clearly develops the theory that such negligence is personal and the liability nonstatutory; also that such liability is not affected by the guest statute. At page 267, the court said: "The issue of Mrs. Smith's negligence was, indeed, a jury question. Section 14607 of the Vehicle Code makes it unlawful for a person to permit an unlicensed minor to operate a motor vehicle; section 14606 prohibits a person from permitting any unlicensed person to operate his vehicle on the highways. '[V]iolation of the statute by the owner makes out a *prima facie* case against him in favor of a person who has sustained injury through the negligence

658

of such unlicensed driver.' (*Owens* v. *Carmichael's U-Drive Autos, Inc.* (1931) 116 Cal.App. 348, 352 [2 P.2d 580].) Knowledge of possession of a temporary permit allowing a person to drive only if accompanied by a licensed driver is sufficient to put the entrustor 'upon inquiry as to the competency of' the unlicensed driver. (*Owens* v. *Carmichael's U-Drive Autos, Inc., supra,* 116 Cal.App. 348, 352.) ▮▮▮ It is then for the jury to determine under the circumstances whether the entrustor is negligent in permitting the unlicensed driver to operate the vehicle. (*Shifflette* v. *Walkup Drayage etc. Co.* (1946) 74 Cal.App.2d 903, 909 [169 P.2d 996] ; *Owens* v. *Carmichael's U-Drive Autos, Inc., supra,* 116 Cal.App. 348, 352.)'' At page 268: ''If the jury could, then, have concluded that Mrs. Smith herself was negligent, we must finally determine if the guest statute truncated her liability because she was a 'person legally liable for the conduct' of Debbie, and it was Debbie's conduct that caused the accident. ▮▮▮ We believe the Supreme Court decision in *Benton* v. *Sloss* (1952) 38 Cal.2d 399 [240 P.2d 575], is enlightening upon this issue: the case holds that the guest statute immunizes the ' ''person legally liable for the conduct of such driver'' ' from a vicarious liability to the guest but not from direct responsibility for his own negligence. (P. 403.)'' At page 270: ''The point is, however, that Mrs. Smith is not charged with the *conduct* of the driver; she incurs liability because she dispatched the jeep with an incompetent driver. Mrs. Smith's tort effected its damage by means of the acts of a defective driver; the fact that such means consisted of Debbie's conduct does not work backward to extinguish Mrs. Smith's liability.'' And at page 272 : ''We conclude that there is nothing inherent in the California guest statute which insulates an owner of a vehicle for his own independent negligence in entrusting it to an incompetent driver. *Benton* v. *Sloss, supra,* 38 Cal.2d 399, makes it clear that the owner as such holds no talisman against liability; the guest statute does not inexorably reach backwards to exonerate the owner from his own tort.''

The result of all these authorities is this. ▮▮▮ The owner is liable within statutory limits for injuries inflicted through negligence of his permittee or of a subpermittee who is driving by leave of the original permittee, but such liability does not extend to a guest; one who negligently entrusts the driving of a car to another, whether the entrustor be owner or original permittee, is liable upon common law principles

to one who is injured through negligence of the driver, and that liability is not affected by statutory limit of amount of damages or other elements of the action.

In the instant case Rudy Bowers entrusted the car to Tom Ayers, and if he negligently did so and that negligence operated as a proximate cause of injury to plaintiff, Rudy is liable at common law. There is substantial evidence, above recited, that Rudy was negligent in this matter and the granting of a directed verdict as to him was erroneous. His father, the owner, likewise could be held liable for negligence of the subpermittee driver under the doctrine of *Souza* v. *Corti, supra,* and *Peterson* v. *Grieger, Inc., supra,* except for the fact that plaintiff was a guest in the car. The court did not err in directing a verdict in favor of M. C. Bowers, the owner.

A fifth cause of action against M. C. Bowers for negligent entrustment of the automobile was voluntarily dismissed by plaintiff.

The fourth count of the amended complaint runs against Joseph Ayers, the father of Tom, and is based upon section 17707 of the Vehicle Code.[3] It will be noted that this liability extends to wilful misconduct as well as negligence, and as heretofore pointed out there is substantial evidence of wilful misconduct. The liability under this section for wilful misconduct extends to a guest. Hence the directed verdict was erroneous as to this defendant.

Much is said in the briefs about the question of agency of one defendant for another and whether it, though an issue drawn by the pleadings, was eliminated by silence of the pretrial order with respect to it. As appears from the foregoing analysis of this case the question of agency has no significance anywhere except in the matter of Rudy entrusting the car to Tom. That act, according to the *Souza* case, *supra* (last paragraph of opinion, page 461), made Tom his agent. Of course, that was a legal implication drawn by the court. The pretrial hearing and order are intended to facilitate the trial,

[3]Veh. Code, § 17707: "Any civil liability of a minor arising out of his driving a motor vehicle upon a highway during his minority is hereby imposed upon the person who signed and verified the application of the minor for a license and the person shall be jointly and severally liable with the minor for any damages proximately resulting from the negligence or wilful misconduct of the minor in driving a motor vehicle, except that an employer signing the application shall be subject to the provisions of this section only if an unrestricted driver's license has been issued to the minor pursuant to the employer's written authorization."

not to impair or impede it. We think that it is unnecessary where an issue has been stated in its larger aspect in the pretrial order for the court to then enumerate its constituent elements as issues still in the case. Here, one of the "issues of fact and law remaining in dispute" was stated as "[n]egligence, if any," of Rudolph Bowers. In the joint statement of counsel which was incorporated into the court's order it was also stated that "[p]laintiff contends that defendants Donald Alan Story, Thomas Ayers and Rudolph Bowers were negligent and that their negligence was a proximate cause of her damage. She further contends that defendant Thomas Ayers was guilty of wilful misconduct and that defendants Joseph Ayers and M. C. Bowers have statutory liability to her under provisions of the California Vehicle Code." So far as agency was pertinent to the case, it was preserved as an issue by this language.

Moreover, plaintiff at the pretrial was given leave "to amend her complaint to state a cause of action against Joseph A. Ayers under Vehicle Code sections 17707 to 17709 and to state a cause of action against M. C. Bowers on the theory of negligent entrustment." This was followed by a new complaint in which the three causes of action of the original pleading were realleged in the same language. Each of them contained an allegation of agency of each defendant for all the others. This allegation in the amended complaint was denied by defendants and thus the question of agency, if eliminated at the pretrial hearing, was restored to the issues and there was no subsequent pretrial order or amendment thereto which eliminated that issue. (See *Posz* v. *Burchell*, 209 Cal.App.2d 324, 334-335 [25 Cal.Rptr. 896]; *Jones* v. *Burgermeister Brewing Corp.*, 198 Cal.App.2d 198, 203 [18 Cal.Rptr. 311]; *Wickman* v. *Opper*, 188 Cal.App.2d 129, 134 [10 Cal.Rptr. 291].)

The judgment is reversed with respect to all defendants except M. C. Bowers; as to him it is affirmed.

Fox, P. J., and Herndon, J., concurred.