[Civ. No. 272. Fifth Dist. Jan. 23, 1964.]

JOHN W. HILL et al., Plaintiffs and Respondents, v. JAMES RICHARD PERRY, a Minor, etc., Defendant and Appellant.

RICKEY CONARD, a Minor, etc., Plaintiff and Respondent, v. JAMES RICHARD PERRY, a Minor, etc., Defendant and Appellant.

(Consolidated Cases.)

Stutsman, Nagel & Ferrari and J. J. Nagel for Defendant and Appellant.

Evans, Schroeder & Campbell, George A. Schroeder, Dubsick & Helon, Manfredo, Best, Forbes & Elke, Dubsick, Helon, Manfredo & Forbes, Hollis G. Best and Elliott D. Chielpegian for Plaintiffs and Respondents.

CONLEY, P. J.—This is an appeal from judgments entered in favor of the plaintiffs in two cases consolidated for trial. The litigation was based upon an automobile accident which occurred on Elm Avenue (otherwise known as Highway 41) in the County of Fresno. The driver of the pickup truck in which his two guests were seated was James Richard Perry, 17 years of age; next to him in the vehicle was a young woman, Wanetta Hill, who was killed as the result of the accident; next to her was Rickey Conard, another young friend who was seriously injured.

The theory upon which James Richard Perry was sued was that he was guilty of wilful misconduct. His father, Richard Perry, owner of the vehicle, was joined as a defendant on the claim that he had been guilty of negligence in failing to keep the brakes of the truck in good condition. The jury found in favor of the plaintiffs, John W. Hill and Evelyn M. Hill, father and mother of Wanetta Hill, and Rickey Conard, who sued through a guardian *ad litem*, but the jury also cleared Richard Perry, father of the driver and owner of the truck. The appeal was filed by the defendant, James Richard Perry.

There is only one question involved—whether the jury was justified in finding from the evidence that the driver of the truck was guilty of wilful misconduct. There is no suggestion that the trial court erred in any respect in rulings on the

pleadings or on the admissibility of evidence or in giving or refusing instructions. The only claim made by appellant is that the defendant driver as a matter of law was not guilty of wilful misconduct. A review of the evidence on the subject is therefore essential.

On July 7, 1961, James Richard Perry was operating his father's 1955 Chevrolet half-ton pickup truck in a northerly direction on Elm Avenue between South and Sumner Avenues. Wanetta Hill was sitting next to him, and Rickey Conard was on the right side of the front seat. Elm Avenue in the vicinity of the point of collision is a paved, two-lane highway 24 feet in width posted for a 55 mile per hour speed. The driver told the investigating officer immediately after the collision that he was traveling at about 60 miles per hour, and that he came over a small rise in the roadway and saw that traffic was moving slowly in front of him. The second vehicle involved in the accident was a 1958 Ford owned and operated by Mrs. Delilah Killibrew, who was also traveling in a northerly direction on Elm Avenue at a speed of about 25 miles per hour; she was following a slow-moving piece of heavy road equipment—a road grader, which had behind it a pickup truck loaded with lumber. A third automobile directly involved was being driven by one Lopez in a southerly direction in the westerly lane of the highway.

The roadway for a distance of some 945 feet southerly of the point of the accident was divided into two lanes by a double line, which constituted a restriction forbidding passing. The defendant driver was thoroughly familiar with this portion of the highway as he had driven over it at least once or twice a week for a prior period of six months. The roadway where the accident happened contains a number of dips and crests described by counsel in the briefs as ''rolling hills.'' The area is such that anyone using it and familiar with conditions controlling traffic would necessarily know that at some points such as that at which the collision occurred vehicles cannot be observed ahead at any considerable distance.

As already stated, the defendant told the investigating officer shortly after the collision that he was going at a speed of approximately 60 miles per hour. He admitted on the witness stand that he might have been going more than 59 miles per hour. Mrs. Killibrew testified that his speed was approximately 70 miles an hour.

As the defendant was traveling up the crest just south of

the accident, he glanced to his left at a fruit stand located at the side of the highway. He was particularly interested in it because the plaintiff Rickey Conard had worked at that stand during the previous summer. At this point Conard said, "Watch out!" Appellant applied his brakes; he said that the truck did not seem to slow down sufficiently so he applied them harder. He left 22 paces or 66 feet of skid marks, which were on the northbound or his right side of the highway, and which moved at a slight angle toward the center white line to a point where there was a scarcely appreciable contact with the rear of the Killibrew car. The skid marks then showed a westerly movement to the southbound lane, and the deposition of heavy tire marks for 18 paces or 54 feet leading up to the point of collision with the Lopez car that caused the death of Miss Hill and the serious injury to Rickey Conard.

There was ample additional evidence tending to show that the brakes on the vehicle driven by the defendant were not in proper condition and that the driver knew it. (See *Rawlins* v. *Lory*, 44 Cal.App.2d 20, 23 [111 P.2d 973].) Kenneth William Rank, a college student and friend of James Richard Perry, testified that shortly before the date of the accident he was riding with Perry and Conard in the Chevrolet pickup along a country road; an animal, a dog or cat, ran suddenly from the left of the roadway and Perry slowed down quickly, applying his brakes, which caught and caused the car to pull to the left.

The trial judge denied appellant's motion for a new trial based on "the insufficiency of the evidence to justify the verdict."

Summarizing, the evidence stated most strongly in favor of the respondents, as we must on this appeal, showed that the driver was propelling a vehicle with known faulty brakes in a 55-mile-per-hour zone at a speed of 70 miles an hour. He was entirely familiar with the highway in the vicinity. It was a narrow roadway restricted to operation of northbound vehicles in a single lane with numerous dips and crests which cut off vision of the road ahead. The driver nevertheless looked to his left at a fruit stand rather than keeping his eyes on the road. He must have known of the danger involved in traversing this highway at this speed and without giving undivided attention to the course he was taking. He knew that the dips and crests in the highway would hide a slow-moving vehicle in the single lane which was pro-

vided for his operation. He knew that his brakes were faulty. Notwithstanding all of this knowledge, he continued on his course at such a speed and in such a manner as to lead the jury to a conclusion that there was a "wanton and reckless disregard of the possible result on his part."

As is said in *Goncalves* v. *Los Banos Mining Co.*, 58 Cal.2d 916, 918 [26 Cal.Rptr. 769, 376 P.2d 833] : "Wilful misconduct means intentional wrongful conduct, done either with knowledge that serious injury to the guests probably will result or with a wanton and reckless disregard of the possible results."

It is clear that excessive speed, although not in itself conclusive, is a factor to be considered by the finder of fact. In *Harlow* v. *Van Dusen*, 137 Cal.App.2d 547, 550 [290 P.2d 911], it is said: "Although, as stated by appellant, excessive speed alone is not necessarily wilful misconduct, nevertheless, as pointed out in respondents' brief, 'speed is an important element to be considered since it, coupled with other circumstances, may constitute wilful misconduct.' In several reported cases, a speed of 60 miles per hour has been held to constitute wilful misconduct when conjoined with such facts as a damp highway, a misty night requiring windshield wipers, etc."

In the *Goncalves* case, *supra*, at page 918, the Supreme Court says: "The jury *could have found* that Menezes knew of the existence of the stop sign in sufficient time to avoid a collision by reducing his speed or stopping but that he decided to ignore the sign and proceeded into the intersection without attempting to abate his excessive rate of speed, without looking to the right or left, and without taking any other action designed to discover or avoid colliding with a vehicle approaching the intersection on Ortegalita. *The evidence is sufficient to support the jury's implied finding that Menezes drove his automobile with a wanton and reckless disregard of the possible results.*" (Italics added.)

We believe that the instant appeal is controlled by the *Goncalves* case. As is said in a case having similar facts, *Jones* v. *Ayers*, 212 Cal.App.2d 646, at page 653 [28 Cal. Rptr. 223] : "The recent decision in *Goncalves* v. *Los Banos Mining Co.*, *supra*, 58 Cal.2d 916, has applied the concept of wilful misconduct in such manner as to be well nigh conclusive in the case before us."

That opinion goes on to say:

"In that instance Menezes, the driver of the car in which

plaintiff's decedent was a guest, was traveling at a speed of about 60 miles per hour, 5 miles in excess of the prima facie speed limit. 'The stop sign was plainly visible, and when they were over 200 feet from the intersection decedent said to Menezes, "Joe, look, there is a stop ahead." Menezes did not look to his right or left as he neared the intersection and did not apply his brakes until immediately before the impact. He did not wear glasses and had not had any problem with his vision prior to the accident.' (P. 918.) The court said, at page 918: 'The jury could have found that Menezes knew of the existence of the stop sign in sufficient time to avoid a collision by reducing his speed or stopping but that he decided to ignore the sign and proceeded into the intersection without attempting to abate his excessive rate of speed, without looking to the right or left, and without taking any other action designed to discover or avoid colliding with a vehicle approaching the intersection on Ortegalita. The evidence is sufficient to support the jury's implied finding that Menezes drove his automobile with a wanton and reckless disregard of the possible results. [Citations.] Several cases holding that in the circumstances there involved it was not wilful misconduct to go through a stop sign are factually distinguishable.' "

The case of *Meyer* v. *Blackman,* 59 Cal.2d 668 [31 Cal. Rptr. 36, 381 P.2d 916] is also direct authority for a holding that the jury had the right to conclude from the evidence that the mental state of the driver of the car brought him within the definition of one guilty of wilful misconduct. In the opinion written by Mr. Justice Peek, at pages 677-678, it is pointed out: " 'In determining whether the driver of a car is guilty of wilful misconduct, his entire course of conduct, including his speed, is to be considered . . .' (*Hallman* v. *Richards,* 123 Cal.App.2d 274, 281 [266 P.2d 812]), and the existence of wilful misconduct is essentially a question of fact. (*Harlow* v. *Van Dusen,* 137 Cal.App.2d 547, 550 [290 P.2d 911].) Thus since it cannot be stated that Wood's conduct did not as a matter of law amount to wilful misconduct, plaintiff had a right to have the jury pass upon that issue.

"Here there was evidence that a few moments before the collision Wood was driving defendants' automobile 65 to 70 miles per hour, that he speeded up as he drove through a blinking yellow light marking a school crosswalk, and that children were then departing the school. Wood was then only 4 blocks from and approaching the intersection with Fifth

Avenue, a principal thoroughfare. The jury could easily have found on the evidence which it heard that Wood was aware of the traffic control signal at the intersection. Although the speed limit was plainly posted at 35 miles per hour the evidence indicated that Wood entered the intersection at approximately 60 miles per hour against the red light, and hit the truck without making any apparent attempt to apply his brakes.

''The foregoing evidence, coupled with the facts of extreme damage to the vehicle, could well support a finding by the trier of fact that Wood drove the Studebaker 'with a wanton and reckless disregard of the possible results.' (See *Goncalves* v. *Los Banos Mining Co., supra,* 58 Cal.2d 916, 918 [sufficient evidence of wilful misconduct where driver apparently ignored stop sign and proceeded into intersection without abating excessive speed]; *Jones* v. *Ayers,* 212 Cal.App.2d 646, 654 [28 Cal.Rptr. 223] [high speed, knowledge of stop signs, opportunity to slow vehicle, no apparent attention paid to stop signs and entry into intersection without reduction of speed]; *Bristow* v. *Brinson,* 212 Cal.App.2d 168, 175 [27 Cal. Rptr. 796] [driver familiar with intersection drove past warning sign and through stop sign at 40 miles per hour]; *Palmer* v. *Agid,* 171 Cal.App.2d 271, 277 [340 P.2d 303] [driver who had had two drinks ran a red light at 60 miles per hour colliding with a truck without applying his brakes].) It follows that defendants' contention that there is no evidence from which the driver's wilful frame of mind or intent may be inferred (see *Lovett* v. *Hitchcock,* 192 Cal.App. 2d 806, 812-813 [14 Cal.Rptr. 117]) is without merit. In fact Wood was familiar with the streets and the speed limits in that area and yet ran or 'jumped' the red light at a busy intersection while traveling at excessive speed. This evidence would be sufficient to support a finding that Wood intentionally acted with a wanton disregard of possible injury to himself and to his passenger in approaching the intersection. (See *Bristow* v. *Brinson, supra,* 212 Cal.App.2d 168, 175-176; *Munson* v. *Friedman,* 154 Cal.App.2d 73, 76-77 [315 P.2d 727]; *Anderson* v. *Newkirch,* 101 Cal.App.2d 171, 178-179 [225 P.2d 247].) ''

*Dodds* v. *Bucknum,* 214 Cal.App.2d 206, 210-211 [29 Cal. Rptr. 393], is helpful to the respondents herein. In that case the plaintiff who was a guest in defendant's motor vehicle brought the action to recover damages for personal injuries sustained in an accident and the District Court of Appeal

upheld the verdict and judgment based thereon in the appeal. A factual analysis of the case shows that the defendant drove rapidly around a city block and just laughed when the plaintiff suggested that he slow up. A second turn at another corner was made at such speed that the car skidded and further expostulation resulted in no improvement in the driving. A third turn at a corner was similarly conducted. The trial court found that the automobile was driven at an excessive rate of speed in violation of traffic controls "with a wilful and wanton disregard for the possible injurious consequences to plaintiff." In discussing the case, the court refers to the definition of wilful misconduct quoted above from the *Goncalves* opinion, *supra,* and says at pages 210-211: "There are numerous cases holding that the failure to obey a boulevard stop sign alone does not constitute wilful misconduct. The same may be said of driving at an excessive speed. (See authorities cited in the recent opinion of this court in *Jones* v. *Ayers,* 212 Cal.App.2d 646, 650 [28 Cal.Rptr. 223].) But either of these wrongful acts when coupled with other circumstances may amount to wilful misconduct.

"Defendant turned the first and second corners on this 'around-the-block' jaunt at such speed that it caused plaintiff concern and she asked him on both occasions to slow up. Neither of these requests seems to have made any impression on defendant. He just laughed at her first remonstration, and apparently proceeded into the second intersection at either higher speed or with less care with the result that the rear end of his car skidded or drifted across the center of the street. This time in asking defendant to slow up plaintiff appears to have briefly 'lectured' him. This however does not appear to have slowed him up for he traveled east on Oakwood, the last block before attempting to negotiate the last turn, at 30 to 35 miles per hour. He did not make the boulevard stop but it does seem that after he passed it, he slowed up some but it does not appear how much. In any event he entered the intersection 'very fast' according to plaintiff's testimony. And the skidding or drifting of his car to the extent that he hit a parked car on the other side of the street tends to support her testimony and to indicate that defendant entered the intersection at too great a speed. This evidence and the reasonable inferences therefrom amply sustain the court's finding that defendant failed to stop at the boulevard stop sign and entered the intersection at a high rate of speed. Since defendant slowed down somewhat after passing

the boulevard stop, it is a reasonable inference that he was aware of its presence. Although plaintiff admonished defendant twice to slow up he paid no attention to her warnings and made the successive turns in an increasingly hazardous manner. In analyzing the evidence at the close of the trial on the issue of liability, the trial judge commented that defendant 'was deliberately driving the car in this fashion to show off. ....' In this connection it should be recalled that defendant was entering a narrow street and that he could reasonably expect cars to be parked thereon. Hence he did not have the same open-space opportunity to straighten up his car after making the turn that he might have had on the race track. These circumstances all added to the possible injurious consequences that were likely to flow from the manner in which defendant operated his car and which he appears to have wilfully and wantonly disregarded. As the trial judge indicated, defendant knowingly and without necessity flirted with danger.

''This factual picture amply sustains the trial court's finding that 'defendant wilfully and intentionally operated said automobile at an excessive rate of speed and in violation of traffic controls with a wilful and wanton disregard for the possible injurious consequences to plaintiff ...' and that such misconduct on the part of defendant proximately caused the injuries sustained by plaintiff in the said accident. Defendant's liability was therefore properly established. (See *Parsons* v. *Fuller,* 8 Cal.2d 463, 468-469 [66 P.2d 430] ; *Rawlins* v. *Lory,* 44 Cal.App.2d 20, 24-25 [111 P.2d 973].) ''

The case of *Bristow* v. *Brinson,* 212 Cal.App.2d 168, 175-176 [27 Cal.Rptr. 796], points out: ''At least the question was one of fact to be determined by the court or jury and not one of law. (*Gillespie* v. *Rawlings,* 49 Cal.2d 359 [317 P.2d 601].)

''The only question remaining is whether defendant Bristow foresaw, or should have foreseen, that injury to his guests would probably result. Again, there was evidence that defendant Bristow was familiar with the intersection and with State Highway 55, and that he knew, or should have known, of the volume of traffic on that highway. He knew that traffic coming down the highway from his left would be concealed from him until his car was in the intersection. Knowing this, he ran the hazard presented. In our opinion, these circumstances also presented a question of fact and not one of law.

"It has been said in cases that the mere act of running through a boulevard stop sign does not in itself constitute wilful misconduct. (*Flannery* v. *Koch, supra,* 103 Cal.App. 2d 55 [228 P.2d 580]; *Mish* v. *Brockus,* 97 Cal.App.2d 770 [218 P.2d 849]; *Winn* v. *Ferguson,* 132 Cal.App.2d 539 [282 P.2d 515].) However, these holdings do not establish any rule to the effect that under any and every circumstance the act of running through a stop sign may not constitute the active misconduct required for proof of wilful misconduct as that term is defined and used in Vehicle Code, section 17158. Under the facts here presented, the issue of whether or not defendant Bristow was liable for wilful misconduct should have been submitted to the court or jury. See *Goncalves* v. *Los Banos Mining Co., supra,* 58 Cal.2d 916; *Browne* v. *Fernandez,* 140 Cal.App. 689 [36 P.2d 122]; *Munson* v. *Friedman,* 154 Cal.App.2d 73 [315 P.2d 727]; *Allen* v. *Robinson,* 85 Cal.App.2d 617 [193 P.2d 498]."

In the opinion in *Hoffman* v. *Slocum,* 219 Cal.App.2d 100, 103 [32 Cal.Rptr. 635], it is said: "Unquestionably this case involves more than just speed. With the consent of the parties, the trial judge viewed the scene of the accident. He observed the raised metal bridge which, he concluded, made it impossible for a southbound driver to observe traffic beyond the bridge. He noted the considerable dips in the roadway both before and after the bridge. There was evidence in the record from which he could infer that decedent driver was familiar with these road conditions, including the posted speed limit of 40 miles per hour. Here the conjunction of high speed and the obstruction of his vision by the bridge rendered decedent incapable of coping with one of the commonest of traffic situtions—the overtaking of slower traffic while meeting an oncoming vehicle. The trier of fact was entitled to infer that this was not simply an error of judgment or a momentary lapse of attention on the driver's part. The evidence supports the finding of a wanton disregard for the safety of both driver and passenger."

From all of these opinions, it is clear that the ascertainment of wilful misconduct in circumstances such as are presented by the evidentiary record is a matter for determination by the finder of fact. Pursuant to proper instructions, the jury concluded that the driver acted in wanton and reckless disregard of the possible results and made its implied finding of wilful misconduct accordingly. In view of the holdings in the foregoing cases, we conclude that we cannot

interfere with this finding of the jury. In the words of the *Goncalves* case, *supra*, the jury "could have found" that the mental state of the driver in the circumstances developed by the evidence showed that he acted in a wanton and reckless disregard of the possible results.

The judgments are affirmed.

Brown (R.M.), J., and Stone, J., concurred.

A petition for a rehearing was denied February 19, 1964, and appellant's petition for a hearing by the Supreme Court was denied March 18, 1964. McComb, J., was of the opinion that the petition should be granted.